UNITED STATES, Appellant,

v.

Arminta C. WILSON, Appellee.

UNITED STATES, Appellant,

v.

Regina A. WILEY, Appellee.

UNITED STATES, Appellant,

v.

Juanitta WHEAT, Appellee.

UNITED STATES, Appellant,

v.

Patricia A. CRAWFORD, Appellee.

UNITED STATES, Appellant,

v.

Pamela A. YATES, Appellee.

UNITED STATES, Appellant,

v.

Toyota ALLEN, Appellee.

Nos. 8246, 8271 to 8273 and 8278.

District of Columbia Court of Appeals.

Argued Dec. 3, 1974.

Decided June 23, 1975.

Garey G. Stark, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Douglas J. Behr, Henry H. Kennedy, Jr., William J. O'Malley, Bernard J. Panetta, II and Mark H. Tuohey, III, Asst. U. S. Attys., were on the brief, for appellant.

John F. Dean, law student counsel, with whom Robert St. John Roper, Washington, D. C. appointed by the court, was on the brief, for appellee Wiley. Kenneth M. Appel, law student counsel, also for appellee Wiley.

Patrick J. Christmas, Washington, D. C., for appellee Wilson.

Clifford P. Brown, Washington, D. C., for appellee Yates.

No appearances for appellees in Nos. 8271, 8272 or 8278.

Before REILLY, Chief Judge, and KERN and NEBEKER, Associate Judges.

KERN, Associate Judge:

The government appeals from the trial court's dismissal with prejudice of informations charging appellees with solicitation for prostitution in violation of D.C.Code 1973, § 22–2701.[1] Appellees had moved to dismiss the informations on the ground that the statute is discriminatorily enforced against women.

The court, after hearing testimony on the motions, concluded that Section 22–

---

1. Section 22–2701 provides in pertinent part:
 It shall not be lawful for *any person* to invite, entice, persuade, or to address for the purpose of inviting, enticing, or per-suading, any person . . . for the purpose of prostitution . . . . (Emphasis added.)

2701 "is enforced exclusively against females", that "it is neither the policy nor the practice of [the Metropolitan Police Department] to make any effort to arrest male persons who are on the streets looking for females with whom they can engage in sexual acts at a price" and that "it is the explicit policy and practice of . . . the Department not to enforce that statute against males who would invite females to engage in sex for a price". Accordingly, the court opined that "[s]o long as the . . . Department persists in its policy of enforcing Section 22–2701 solely against females, this court must dismiss the prosecutions resulting."

The sole evidence before the trial court concerning the policy and practice of the Department in enforcing Section 22–2701 consisted of the testimony of the Commanding Officer of the Prostitution, Perversion and Obscenities Branch of the Morals Division of the Police Department. He testified in essence that:

In order to arrest for violation of Section 22–2701, a police officer must overhear the solicitation for prostitution;

In his opinion an offer by a male to pay a female money to engage in a sexual act with him would constitute the offense of solicitation for prostitution;

One of the functions of police officers assigned to his Branch is to be solicited by a prostitute, and his officers are instructed under no circumstances themselves to solicit but rather to wait until they have been solicited by the prostitute, a sexual act is described by her and a price agreed on before they can arrest her;

The *modus operandi* of his officers is to walk in the area where prostitutes are believed to be as if they were prospective customers, "the prostitute will normally, as he's [the officer] walking by, say, 'hi are you sporting', and the conversation will go from there";

The Department on occasion has placed female police officers on the street to pose as prostitutes and, thereafter, males looking for prostitutes were arrested on the charge of soliciting for prostitution; but, the cases "were all dismissed because [of] the entrapment aspect. And we have never had a conviction of a male subject for soliciting a policewoman that I know of", because "the girl usually does the approaching and if the policewoman says hi, are you sporting, that's entrapment";[2] and,

In answer to a question from the trial court as to why women undercover officers posing as prostitutes in order to arrest men seeking to buy the favors of a prostitute could not adopt the same approach taken by undercover male officers making a case against prostitutes, the Lieutenant explained, "That seems to be the problem that it doesn't just work that way on the street . . . the approach is always made by the girl . . . the john [male customer] feels that the woman should be telling him what he's going to get . . . ." The male undercover officer is "able to get around . . . for the simple reason the girl is willing to tell what the act is the man is willing to obtain".

As a starting point for our analysis we will assume that the Constitution[3] pro-

2. We, of course, express no view as to the circumstances, if any, under which a female customer accused of soliciting a female undercover officer could raise the defense of entrapment. The officer's testimony is significant as it reflects the Department's lack of success in prior efforts to enforce the statute against men, and therefore bears on the reasonableness of its failure to continue such attempts.

3. It is of course the equal protection concepts of Fifth Amendment due process which are applicable in the District. *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Washington v. United States*, 130 U.S.App.D.C. 374, 381–82, 401 F.2d 915, 922–23 (1968).

hibits discriminatory enforcement of criminal laws, and that impermissibly discriminatory conduct by the police bars prosecution under even valid laws.[4] At the same time, we must recognize when dealing with law enforcement that prosecutorial discretion "is by its very nature exceedingly broad". *United States v. Bell,* 506 F.2d 207, 222 (D.C.Cir. 1974). "The conscious exercise of some selectivity in enforcement is not itself a federal constitutional violation." Denial of equal protection of the laws can be found only where "selection [is] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962).

 One claiming the defense of discriminatory enforcement of the laws bears a heavy burden of proving the actual existence of intentional and purposeful discrimination against him as an individual or the class of which he is a member. *United States v. Cozart, supra,* at 344; *Washington v. United States, supra,* 130 U.S.App. D.C. at 384, 401 F.2d at 925. *See Moss v. Hornig,* 314 F.2d 89 (2d Cir. 1963). Accepting the finding of the trial court that the Metropolitan Police Department is making no effort to seek out and arrest males who solicit females to engage in sexual acts with them for a price,[5] such con-

scious and intentional selectivity in enforcement of the criminal laws is not violative of the Constitution if it rests upon a valid ground. *United States v. Steele,* 461 F.2d 1148, 1152 (9th Cir. 1972). The police have, and indeed must have, broad discretion in allocating their available resources in the manner they deem will be most effective. Selectivity in law enforcement is impermissible only if designed to discriminate against those prosecuted rather than to be part of a "rational pattern of general enforcement." *People v. Utica Daw's Drug Co.,* 16 A.D.2d 12, 21, 225 N.Y.S.2d 128, 136, 4 A.L.R.3d 393, 402 (1962).

In the instant case, the *uncontroverted* testimony was that the use of women undercover officers to arrest male solicitors of prostitutes had proven infeasible, both because of the scarcity of women police officers on the force and because the general rule among streetwalkers is that the women must name the act and the price. The trial court rejected as contrary to "common experience" the testimony that (1) the prostitute makes and is expected to make the solicitation and (2) the Department's brief experience with the use of women undercover agents had not resulted in convictions.[6] We think it was error for the trial court to reject the uncontroverted testimony of the officer. We cannot agree that the testimony was inherently incredi-

---

4. *East Coast Lumber Terminal v. Babylon,* 174 F.2d 106, 112 (2d Cir. 1949). *See United States v. Cozart,* D.C.App., 321 A.2d 342, 343 (1974); *Washington v. United States, supra* at 383, 401 F.2d at 924. *But see State v. Hicks,* 213 Or. 619, 325 P.2d 794 (1958).

5. At the time of appellees' arrests men were not being arrested for the offense of solicitation for purposes of prostitution. Of the 550 arrests made for the offense in 1973 all were of women, and all were made by male undercover police officers. The Department disclaims any knowledge of men who solicit women to engage in acts of prostitution with them. It maintains no women undercover officers whose function is to be solicited by male customers but it did at the time of the hearing have several women undercover officers working "on the streets" to arrest pimps.

6. This testimony must be read in light of the fact that the Department had concentrated the bulk of its enforcement efforts against streetwalkers, and in those areas of the city where streetwalking is most prevalent. They have done so because investigations of call girl activities, where solicitations by men might be more common, have been found to be prohibitively expensive in terms of the time and effort required. No claim is made that this decision is based on impermissibly discriminatory criteria, and we think it is reasonable. "[There] is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency v. New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949).

ble, *see Jackson v. United States,* 122 U.S. App.D.C. 324, 353 F.2d 862 (1965), and no basis appears in the record to doubt the witness's credibility. *Apolskis v. Concord Life Ins. Co.,* 445 F.2d 31 (7th Cir. 1971).

▮ Viewing all the evidence presented in this case, we are not convinced that appellees have, as a matter of law, demonstrated a conscious policy of discrimination based on sex in the enforcement of Section 22–2701.[7] Given the testimony as to the nature of the offense at issue here and the past experience of the Department in enforcing the statute, and giving due respect to the discretion vested in the police rationally to allocate their resources and efforts where they find the greatest need and anticipate the greatest benefit, we do not find here administration of the statute with such "an evil eye and an unequal hand", *Yick Wo v. Hopkins,* 118 U.S. 356, 374, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886), as to rise to the level of a constitutional violation.

Accordingly, the orders of dismissal are reversed.

*So ordered.*

REILLY, Chief Judge (concurring):

As I agree not only with Judge Kern's conclusion but also his lucid reasons for

reversing the trial court, a statement of additional grounds for reversal may seem superfluous. But, as the opinion of the trial court portrays such a distorted picture of the statutes in this jurisdiction dealing with commercialized vice and their enforcement, a few observations to put the matter in proper perspective seem to be in order.

By the device of quoting only a portion of that section of the Code under which appellees were charged—D.C.Code 1973, § 22–2701—the author of the opinion asserted that "[t]he evidence . . . demonstrates beyond any doubt that the quoted portion . . . is enforced exclusively against females."[1] This ignores the fact that this very section of the Code is relied upon by undercover officers in arresting men proposing homosexual conduct to strangers. (See citations of numerous decisions of the court affirming convictions for such solicitations under § 22–2701 collected in n. 4, *Riley v. United States,* D.C.App., 298 A.2d 228 (1972), a decision rejecting a constitutional challenge to this code provision.)

The trial court's opinion also fails to state that § 2701 is only one part of Ch. 27, Title 22, of the D.C.Code—a comprehensive chapter entitled "Prostitution-Pandering" containing several other code sections defining other offenses related to the pro-

---

7. We found a similar claim of discriminatory enforcement of Section 22–2701 to be likewise unsupported by the record in *United States v. Moses,* D.C.App., 339 A.2d 46 (1975).

1. The words omitted, following immediately after the phrase "for the purpose of prostitution", are: "or for any other immoral or lewd purpose." It is under this latter disjunctive phrase that males soliciting passersby to engage in sodomy are generally charged —possibly because of a widely held assumption by prosecutors that the term prostitution refers to acts of venal intercourse by a certain class of women, although the dictionary shows that the word has acquired a broader meaning. *See Webster's International Dictionary,* 2nd Ed. (Unabridged).

Conceivably, however, the police may regard the term as encompassing only heterosexual acts, for the supervising police officer who testified recognized that there are such persons as "male prostitutes" and that they frequently advertise their services in underground pornographic publications. He testified that the reason no arrests had been made of such persons was that neither he nor his staff of investigators had found any Washington addresses for male prostitutes listed in these periodicals. The officer's concept of the term "male prostitute" seems more limited than common usage, for men offering to sell their services for homosexual gratification are often called male prostitutes, and, as noted in the body of my concurring opinion, policemen use the same methods to apprehend these prostitutes when engaged in public solicitation that they employ against female streetwalkers.

motion of commercialized vice, *e. g.,* running houses of prostitution, § 22–2712;[2] inducing females to reside in such houses, § 22–2705; procuring, § 22–2707, etc. The reported cases in the annotated code reveal that most of the offenders convicted under these sections have been males, and that in the enforcement of the procuring statute, arrests are frequently brought about by the use of plainclothes officers accosted by pimps who for a stated sum offer to arrange the services of a prostitute.[3]

In short, the implication that the police discriminatorily enforce the vice statutes only against women is misleading; and the trial judge's denunciation of the police force for conforming to "our historical double standard" and analogizing the situation to a hypothetical policy of enforcing criminal statutes against blacks and not against whites must be deemed an unjudicial exercise of inflammatory rhetoric.

If the applicable District statutes or their enforcement were directed only at female vendors of illicit sexual activity, as may be the situation in some states—*State v. Devall,* 302 So.2d 909 (La.1974)[4]—a constitutional question of some substance might be present. The text of the lower court's opinion reveals, however, that its underlying notion is that the buyers as well as the sellers of illicit sexual services should be equally punished, and that while the statute prohibits only solicitation defined as "inviting, enticing, or persuading" —the police department could round up substantial numbers of prospective customers of prostitutes if it saw fit to put on the streets a squad of police—presumably women disguised as harlots—to provoke such invitations.[5]

According to the police official who testified, however, his department did adopt such methods in 1970 but discontinued the scheme because it did not result in convictions. Despite this explanation, the trial court without any record support whatever, saw fit to disparage this testimony and to mandate its own personal view of what police tactics might be effective.

Plainly, it is outside the province of a trial court to direct a police department, whose manpower is already severely strained in coping with the increase in such major felonies as murder, robbery, rape, and other assaults, how best to utilize its

---

2. This court has held that another section of the Code, § 22–2722, prohibiting the keeping of bawdy houses, applies to the male proprietor of a house of homosexual assignation. *Harris v. United States,* D.C.App., 293 A.2d 851 (1972), *vacated en banc for other reasons,* 315 A.2d 569 (1974).

3. *Langley v. United States,* D.C.App., 264 A. 2d 503 (1970); *Walker v. United States,* D.C.App., 248 A.2d 187 (1968); *Sellers v. United States,* D.C.Mun.App., 131 A.2d 300 (1957).

4. In this case, a majority of the Louisiana Supreme Court—two justices dissenting—upheld the constitutionality of a state statute defining prostitution as the " . . . practice by a female of indiscriminate sexual intercourse with males for compensation" despite "equal protection" arguments.

5. Subsequent to this implied suggestion, the police, even though an appeal was promptly noted, did try such an experiment, thereby, according to the press, creating the absurd spectacle of female police officers dressed and made-up in the accoutrements of the profession, congregating on the same street corners which prostitutes notoriously frequent, hailing male motorists, and elbowing the real professionals in sidling up to possible patrons. Obviously any persons arrested under such circumstances might well have claimed an arguable entrapment defense.

In his brief, the United States Attorney complains that after issuing his opinion in this case, the trial judge took advantage of his then current assignment in calendar control to dismiss summarily some 60 other informations on the strength of his own constitutional views instead of referring them to other judges or even awaiting the filings of written motions to dismiss in compliance with Super.Ct.Crim.R. 47–1. Moreover, instead of dismissing new cases solely on the authority of a trial court decision challenged on appeal, the better practice is to continue such matters.

Apparently this roadblock to law enforcement stirred the police department, against its better judgment, to resort for a few days to methods already proved impracticable.

personnel in the enforcement of a relative-
ly minor misdemeanor statute. As this
court is satisfied that the record does not
support any finding of sexual discrimina-
tion, I concur in the judgment of reversal.

NEBEKER, J., concurs in the opinion of
KERN, J., and in the concurring opinion
of REILLY, C. J.