**Rekaby EISSA, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 83–1310.

District of Columbia Court of Appeals.

Argued Nov. 29, 1984.

Decided Dec. 27, 1984.

Elaine Mittleman, Falls Church, Va., appointed by this court, for appellant.

John H. Palmer, Jr., Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton, and Melvin R. Wright, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and MACK and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of sexual solicitation in violation of D.C.Code § 22–2701 (1984 Supp.).[1] He advances several argu-

---

1. Section 22–2701 makes it a crime "to invite, entice, persuade, or to address for the purpose of inviting, enticing, or persuading, any person or persons sixteen years of age or over in the District of Columbia, for the purpose of prostitution, or any other immoral or lewd purpose...." This portion of the statute was originally enacted in 1935 and has not been changed

ments on appeal, most of which he did not present to the trial court. We affirm the conviction.

Between 1:00 and 2:00 a.m. on July 7, 1983, appellant approached a woman standing on the corner of 14th and P Streets, N.W. Unknown to appellant, the woman was Officer Gina Giles of the Metropolitan Police, working as an undercover decoy on the prostitution squad. Officer Giles recounted their conversation:

He came to me and said, "Come with me." And I asked him where. He said that he lived on Rhode Island Avenue. And I asked him, what were we going to go there for? And he told me what he wanted. And I said, well, we had to talk business first and get the money straightened out. He told me he would pay me $10 to screw him.

The officer testified that she understood that "screw" meant a "sexual act" and that, although appellant spoke with an accent, she understood everything he said.[2] As appellant tried to get Officer Giles to walk across the street with him, she made a prearranged signal to her partner, Officer Clinton Williams, who was waiting nearby. Williams came over and identified himself and Giles as police officers. Williams placed appellant under arrest after a brief struggle, despite appellant's insistence that Giles was his sister.[3]

Appellant's version of the incident was quite different. He said that he merely invited Officer Giles to join him for a drink, even though he thought she was a prostitute. When Officer Williams approached, appellant thought he was Giles' pimp and was about to "kidnap me and take me away"; that was why he resisted when Williams started to place him under arrest.

The trial court credited the testimony of Officer Giles and found appellant guilty as charged. The court specifically found Giles' testimony that appellant "did ask to screw her for $10 [to be] credible and accurate." With regard to the possibility of a language barrier, the court found:

I understand that Mr. Eissa is not very fluent or articulate in the English language and has not been in this country for very long. Perhaps he has difficulty understanding what people say to him.

But I find beyond a reasonable doubt that it was Mr. Eissa who did proposition Officer Giles; and despite his limited knowledge of the English language, I think that Mr. Eissa does understand the meaning of the word "screw," and that it was he, in fact, who did proposition Officer Giles.

■ At trial appellant's main contention was that the court should accept his version of the facts as true. The trial court, however, credited Officer Giles' testimony instead and rejected appellant's account of what happened. On appeal, therefore, we cannot rely on appellant's testimony; on the contrary, we must accept the trial court's findings because they are amply supported by the evidence. D.C.Code § 17–305(a) (1981); *see, e.g., United States v. Lyon,* 348 A.2d 297, 299 (D.C.1975).

■ Appellant makes several challenges to the constitutionality of the sexual solicitation statute. Since none of these arguments were presented to the trial court, we would have to find plain error before we could reverse appellant's conviction. *See, e.g., United States v. Lewis,* 140 U.S.App. D.C. 40, 46, 433 F.2d 1146, 1152 (1970). We find no plain error, as that term has been

since then. The next sentence, which was added in 1981, states that inviting, enticing, or persuading "includes, but is not limited to," certain specified types of activity in a public place. D.C.Code § 22–2701.1 (1984 Supp.), which was also enacted in 1981, defines prostitution as "the engaging, agreeing to engage, or offering to engage in sexual acts or contacts with another person in return for a fee."

2. Appellant, a native of Egypt, testified that he had been in the United States for five years.

3. Officer Williams corroborated Giles' testimony to some extent. He testified that he saw appellant approach Officer Giles and engage her in conversation, but he was too far away to hear what was said.

**612**

defined by this court in *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc) ("the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial"). It cannot be said that the sexual solicitation statute, which has been part of the code for almost fifty years, "is so clearly unconstitutional that it should have been ruled upon by the trial court despite the failure of appellant to raise the point below ...." *Williams v. United States*, 237 A.2d 539, 540 (D.C.1968) (citations omitted).

 Even if all of appellant's claims of error had been properly preserved for appellate review, we would find them meritless. His vagueness challenge cannot be sustained in light of *Hawkins v. United States*, 105 A.2d 250 (D.C.1954). *See also Riley v. United States*, 298 A.2d 228 (D.C. 1972), *cert. denied*, 414 U.S. 840, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973). His claim that the statute is overly broad and infringes First Amendment rights must also be rejected. *United States v. Moses*, 339 A.2d 46 (D.C.1975), *cert. denied*, 426 U.S. 920, 96 S.Ct. 2624, 49 L.Ed.2d 373 (1976). We note that appellant's overbreadth argument necessarily depends on our acceptance of his testimony that he merely invited Officer Giles to have a drink with him. As we have pointed out, however, we cannot ignore the trial court's factual finding that what appellant really said was something entirely different.

 Appellant also contends (for the first time on appeal) that the statute is unconstitutional as applied. Specifically, he argues that a higher standard of proof must be adopted when the person charged with sexual solicitation is a putative customer of a prostitute rather than the prostitute herself. We cannot accept this argument without overruling *Dinkins v. United States*, 374 A.2d 292 (D.C.1977) (en banc), which we would not do even if we could.[4] This court made clear in *Dinkins* that whether there has been a violation of the statute depends on the specific facts of each case, evaluated in light of all the surrounding circumstances. It is not necessary to prove any particular language or conduct in order to prove the offense. We see no reason to treat prostitutes and their customers differently; indeed, if we did so, the prostitutes might have a basis for claiming a denial of equal protection. After all, being a prostitute is not a crime in the District of Columbia. The offense proscribed by D.C.Code § 22–2701 consists of inviting, enticing, or persuading another to engage in prostitution, or attempting to do so. Under the statute it makes no difference which party does the inviting, enticing, or persuading, and we know of no authority which would justify the use of different standards of proof, depending on who is charged with the crime.

 Appellant contends that it is a denial of equal protection to require corroboration in cases of homosexual solicitation but not in cases of heterosexual solicitation. *See, e.g., Wajer v. United States*, 222 A.2d 68, 69 (D.C.1966). This contention is frivolous. *Garrett v. United States*, 339 A.2d 372, 373 (D.C.1975); *Guarro v. United States*, 99 U.S.App.D.C. 97, 237 F.2d 578 (1956); *Kelly v. United States*, 90 U.S.App. D.C. 125, 194 F.2d 150 (1952). His argument that the use of women decoys in prostitution cases is somehow inappropriate[5] is also completely without merit. *See United States v. Kenyon*, 354 A.2d 861 (D.C.1976). The decision to adopt a partic-

4. Under *M.A.P. v. Ryan*, 285 A.2d 310 (D.C. 1971), a decision which is binding precedent, as *Dinkins* is, can be overruled only by the court en banc, not by a division.

5. Appellant bases his argument on our observation in *United States v. Wilson*, 342 A.2d 27 (D.C.1975), that the use of undercover policewomen as decoys was "infeasible." He takes that single word out of context. What we said

in *Wilson* was that "the *uncontroverted* testimony was that the use of women undercover officers to arrest male solicitors of prostitutes had proven infeasible ...." *Id.* at 30 (emphasis in original). In this case there was no testimony at all regarding the feasibility of using female decoys. Moreover, we cannot assume (nor can appellant) that what may have been "infeasible" in 1974, when the offense in the *Wilson* case took place, was not entirely feasible nine years

ular method of law enforcement is normally left to the police and will be upheld unless there has been some form of invidious discrimination, which appellant has not shown. *Davis v. United States,* 390 A.2d 976, 980 (D.C.1978); *United States v. Cozart,* 321 A.2d 342 (D.C.1974).

Finally, appellant argues that the police violated his due process rights by using excessive force to arrest him. Given the facts of the case, we reject this argument. *Washington v. United States,* 475 A.2d 1127 (D.C.1984); *cf. Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). Appellant's reliance on *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), is misplaced for the reasons stated in *Washington, supra,* 475 A.2d at 1130. *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), on which appellant also relies, deals with the subject of entrapment. Appellant did not raise an entrapment defense, and thus *Russell* has no bearing on this case. Even if it did, it would not support appellant's argument.

*Affirmed.*

later, when appellant encountered Officer Giles at 1:00 a.m. on a street corner.