**Beverly S. GRAVES, Appellant,**

v.

**UNITED STATES, Appellee.**

**Lynn KURLANSIK, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 83–1378, 84–36.**

District of Columbia Court of Appeals.

Argued Dec. 3, 1985.

Decided Oct. 10, 1986.

---

Jonathan Stern, Washington, D.C., appointed by the court, for appellant Graves.

Kevin J. Lanigan, Washington, D.C., appointed by the court, for appellant Kurlansik.

Edward C. McGuire, Asst. U.S. Atty., with whom Joseph E. DiGenova, U.S. Atty., and Michael W. Farrell and Thomas P. Murphy, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MACK, NEWMAN and FERREN, Associate Judges.

FERREN, Associate Judge:

After a bench trial, the court convicted appellants of "inviting for purposes of prostitution." D.C. Code § 22–2701 (1985 Supp.) Appellants contend (1) this statute is unconstitutionally vague on its face and as applied, (2) the trial court improperly admitted evidence of appellants' prior convictions for sexual solicitation, and (3) the evidence was insufficient to prove guilt.[1] We conclude the trial court abused its discretion by admitting such "other crimes" evidence in the government's case-in-chief. We also conclude the evidence was insufficient for conviction. Accordingly, without need to address appellants' constitutional arguments, we reverse with instructions to enter judgments of acquittal.

## I.

On September 13, 1983, Officers Wayne Mullis and Gary Scott, who had four and ten years experience, respectively, in prostitution enforcement, observed appellants in the vicinity of 14th and L Streets, N.W. for 45 minutes between 12:35 and 1:20 a.m. Officer Mullis testified, over objection, that he knew this area had a high incidence of prostitution.

The officers saw appellants together— never more than three or four feet apart— waiving, yelling, and attempting to pull over six to eight moving vehicles. All of them appeared to be occupied by males over sixteen years of age. The officers watched appellants converse with three of these men. Appellants, however, did not enter the vehicles.

The officers also observed appellants approach three male pedestrians who appeared to be over 16 years of age and saw appellant Kurlansik, while Graves was "with her," grab the groin of one of them. Officer Scott added that he had seen other prostitutes grab men's groin areas—that this is common. Appellants, however, did not accompany these pedestrians as they walked away.

During the entire period of observation, the officers overheard only two words, "Hey honey," which appellant Kurlansik yelled once, while Graves was "with her," at two passing cars. The officers did not overhear any conversation of Kurlansik or Graves in which either of them "engaged, agreed to engage, or offered to engage in

---

1. Appellants also assert in their brief that the one-house legislative veto provision of the Home Rule Act invalidates D.C. Code § 22–2701 (1985 Supp.). In light of *Gary v. United States,* 499 A.2d 815 (D.C.1985) (en banc), *cert. denied,* — U.S. —, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986), appellants have conceded this argument.

sexual acts or contacts with another person in return for a fee."

Appellants were not observed waving at females, taxicabs, or buses. Graves wore jeans and a black T-shirt. Kurlansik wore jeans and a black blouse. Officer Scott testified that he had seen prostitutes in jeans and pullover tops, that for prostitutes such attire is fairly common, and that prostitutes wear many different styles of attire. Officer Mullis testified that he had arrested prostitutes wearing jeans and pullover shirts.

Before trial, appellants had moved to suppress *in limine* any testimony concerning their prior acts of inviting for purposes of prostitution. The trial court had denied the motion, ruling that such evidence would be admissible either to show "motive" or "surrounding circumstances." The court also had ruled that "the possible prejudice is not sufficient" to warrant suppression. Accordingly, Officer Mullis testified in the government's case-in-chief that he had arrested Graves after she had sexually solicited him in a parked car in the 1000 block of 14th Street in January or February of 1983, seven months before her arrest in this case. Mullis also testified that he had arrested Kurlansik after she had waived his car over, in a manner similar to her actions in this case, in the 1100 block of 14th Street in January or February of 1983. He further confirmed that both arrests had resulted in convictions "for the crime of sexual solicitation."

At the close of the government's case-in-chief, appellants moved for judgments of acquittal on the ground that the government had failed to prove the observed acts were "for the purpose of prostitution," as required by D.C. Code § 22–2701 (1985 Supp.). The trial court denied the motions.

Graves testified on her own behalf after two of her friends had testified to explain why she was in the area on the night she was arrested. Graves acknowledged that she had been arrested for inviting for prostitution an unknown number of times and had been jailed twice for that offense. Her last period of incarceration had ended six days before her arrest in this case. Graves admitted she had been in the area of 14th and L Streets, N.W. with Kurlansik during the observation period, but she denied being there for the purpose of prostitution. She testified she had been there to find a friend who had kept her possessions while she had been incarcerated. She denied waving at cars, but she added that two males in a vehicle had approached her and asked for a date, which she had declined. She further testified that Kurlansik had talked with two men on two separate occasions that evening, but that Graves could not recall whether Kurlansik had waved at any cars. Graves also testified that she would be embarrassed to work as a prostitute dressed "sloppy" in jeans and a T-shirt.

On cross-examination, Graves testified that on the night of her arrest she had about $20 and that she could make as much as $200 per night working as a prostitute. Graves further testified, however, that she did not need such money because she had a rent-free place in which to stay and had a friend who lent her money. She also testified, on cross-examination, that she has seen prostitutes grab men's groin areas but that she had never done so.

Unlike Graves, Kurlansik presented no evidence in her defense. The trial court found both appellants guilty. The court suspended imposition of sentence on Graves and placed her on two years of supervised probation, requiring her to maintain her employment and to perform 100 hours of community service. The court sentenced Kurlansik to 90 days in prison. These appeals followed.

## II.

Appellants contend the trial court abused its discretion by admitting evidence of appellant's prior convictions for commercial sexual solicitation. Under the circumstances, we agree.

## A.

■■■■ "[E]vidence of one crime is inadmissible to prove *disposition* to commit crime, from which the [trier of fact] may infer that the defendant committed the crime charged." *Drew v. United States,* 118 U.S.App.D.C. 11, 15, 331 F.2d 85, 89 (1964) (footnote omitted; emphasis in original). Although we review for abuse of discretion, *e.g., Gates v. United States,* 481 A.2d 120, 123 (D.C.1984), the trial court must "presume prejudice and exclude evidence of other crimes," *Drew,* 118 U.S.App. D.C. at 15–16, 331 F.2d at 89–90, unless the evidence "comes under one or more well recognized exceptions" that reflect a legitimate evidentiary purpose, such as to show motive, intent, identity, a common scheme or plan, or absence of mistake or accident. *Campbell v. United States,* 450 A.2d 428, 430 & n. 3 (D.C.1982) (citing *Drew;* footnote and other citations omitted); *accord Wheeler v. United States,* 470 A.2d 761, 769 (D.C.1983); *Willcher v. United States,* 408 A.2d 67, 75 (D.C.1979). Even when the other crimes evidence satisfies one or more of the exceptions, however, the trial court must exclude the evidence unless, in an exercise of "discretion separate from the initial *Drew* determinations," the court concludes that the probative value will outweigh the prejudicial impact on the defendant. *Campbell,* 450 A.2d at 430.

There is, nonetheless, another exception. We have stated on many occasions that evidence of a defendant's other criminal activity "is admissible when relevant to explain the immediate circumstances surrounding the offense charged and when its probative value outweighs its prejudicial effect." *Green v. United States,* 440 A.2d 1005, 1007 (D.C.1982) (citing *Tabron v. United States,* 410 A.2d 209, 214 (D.C. 1979)); *accord Robinson v. United States,* 486 A.2d 727, 729 (D.C.), *cert. denied,* — U.S. —, 106 S.Ct. 151, 88 L.Ed.2d 125 (1985); *Toliver v. United States,* 468 A.2d 958, 960 (D.C.1983). The rationale here is that evidence of other criminal activity within the circumstances immediately surrounding the charged offense is really "not

other crimes evidence," as that concept is traditionally understood, "because it is too intimately entangled with the charged criminal conduct." *Toliver,* 468 A.2d at 960.

## B.

The trial court ruled *in limine* that evidence of appellant's prior acts of inviting for purposes of prostitution was admissible under the *Drew* exception for motive or, alternatively, to show surrounding circumstances. The court added that the "possible prejudice" would not warrant suppression. On appeal, the government adds that this evidence also was admissible under *Drew* to prove appellants' intent, *i.e.,* that their actions were for the purposes of prostitution.

■■■ Evidence of appellants' convictions for sexual solicitation seven months before the evening of the charged offenses is not evidence of "circumstances *immediately* surrounding the offense charged." *Robinson,* 486 A.2d at 729 (citing *Green,* 440 A.2d at 1007) (emphasis added). Those previous sexual solicitations were not "intimately entangled with the criminal conduct." *Toliver,* 468 A.2d at 960. The trial court, therefore, erred in admitting the evidence on this basis.

Motive and intent, while conceptually distinct, are nonetheless related. "Criminal intent has been defined 'as that state of mind which negatives accident, inadvertance or casualty.'" J. Weinstein & M. Berger, 2 WEINSTEIN'S EVIDENCE ¶ 404[12] (1985) (footnote omitted). Thus, "[i]ntent means that a person had the purpose to do a thing...." Criminal Jury Instructions for the District of Columbia, No. 3.01 (3d ed. 1978). In contrast, "Motive has been defined as 'supply[ing] the reason that nudges the will and prods the mind to indulge the criminal intent.'" J. Weinstein & M. Berger, 2 WEINSTEIN'S EVIDENCE ¶ 404[14] (1985) (footnote omitted). Thus, motive is the reason why one may have a particular intent or purpose.

Because motive and intent are related, because the trial court clearly believed that *Drew* permitted substantive evidentiary use of appellant's prior convictions, and because the trial court ruled that evidentiary use of appellant's prior convictions would not create serious prejudice, we agree that the government's reliance on the *Drew* exception for intent, as well as motive, is properly before us, even though the trial court did not expressly rule on that ground.

First, we consider motive. As to any *Drew* exception, we have said that the trial court must make "two threshold determinations" in order "[t]o assess the probativeness and relevance of a prior incident":

(1) was an issue raised on which other crimes evidence could be received; and (2) was the proffered evidence relevant to that issue. Whether an issue has been raised for purposes of receiving other crimes evidence depends upon both [a] the elements of the offense charged and [b] the defenses presented.

*Willcher*, 408 A.2d at 75 (citations omitted). Clearly, appellants' respective motives—the reasons why either may have intended to invite for prostitution—were not an element of the offense charged. Therefore, the motive exception could not properly serve as a basis for admissibility. *Cf. United States v. Franklin*, 704 F.2d 1183, 1187–88 (10th Cir.) (evidence of previous assault on interracial couple admissible to show motive in prosecution for willfully injuring "any person because of his [or her] race," 18 U.S.C. § 245(b), since motive was element of crime), *cert. denied*, 464 U.S. 845, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983).

### C.

We turn, therefore, to the intent exception. Appellants' intent was at issue in the sense that the government had to prove a specific intent element of the crime: inviting "for the purpose of prostitution." D.C. Code § 22–2701 (1985 Supp.). Nonetheless, even though other crimes evidence may be relevant to an "element[ ] of the offense

charged," the "defenses presented" also are germane to admissibility. *Willcher*, 408 A.2d at 75. The courts are divided, however, on the extent to which a defendant must actually contest a particular issue before it is "raised," *id.*, for purposes of receiving inherently prejudicial, other crimes evidence.

Given the presumption of innocence and the inevitable tendency of other crimes evidence to show criminal propensity, despite a cautionary instruction, there is a serious question whether the government can properly introduce such evidence unless necessary to rebut a particular defense. Suppose, for example, an accused defends on the ground that he or she was elsewhere and thus did not commit the act charged, instead of admitting the act and attempting to excuse it on grounds of accident or mistake. Because in this situation intent is not contested, the use of other crimes evidence to establish intent (in contrast, for example, with identity) would not be probative of an issue in the case, except in the sense that some species of criminal intent almost always must be found. If other crimes evidence were admissible simply because intent must be proved, whether the defendant contests it or not, then such inherently prejudicial evidence would become routinely admissible, without regard to whether the government really needed it. Such an approach to admissibility, when intent is not a contested issue, would "swallow the rule against admission of evidence of prior misconduct." *United States v. Ring*, 513 F.2d 1001, 1009 (6th Cir.1975). The question, then, is whether, and to what extent, a defendant must contest intent before the trial court can properly rule that other crimes evidence is more probative on that issue than prejudicial to the defendant.

### (1)

Some courts have held that the elements of the crime charged are enough in themselves to raise an issue justifying admission of other crimes evidence in the government's case-in-chief. *See, e.g., Franklin,*

704 F.2d at 1188 (specific intent); *United States v. Engleman,* 648 F.2d 473, 478–79 (8th Cir.1981) (same). " 'Faced with a plea of not guilty, the prosecution is under no obligation to wait and see whether the defendant argues the non-existence of an element of crime before the prosecution presents [other crimes] evidence establishing the element.' " *United States v. Hamilton,* 684 F.2d 380, 384 (6th Cir.) (quoting *United States v. Buchanan,* 633 F.2d 423, 426 (5th Cir.1980), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 301 (1981)), *cert. denied,* 459 U.S. 976, 103 S.Ct. 312, 74 L.Ed.2d 291 (1982).

Other courts, however, subscribe to a general rule precluding admission of other crimes evidence in the government's case-in-chief unless the government establishes a foundation indicating that the defendant actually will contest an issue such as intent by claiming, for example, accident or mistake. These courts have perceived a sufficient foundation in defense counsel's opening statement, *United States v. Price,* 617 .F.2d 455, 459–60 (7th Cir.1979) (suggested alleged bribes were "gifts" or "contributions"), or in previous proceedings in the same case, *United States v. Adderly,* 529 F.2d 1178, 1182 (5th Cir.1976) (hung jury), or in the obviousness of intent, for example, as "the only real issue," *United States v. DeLoach,* 210 U.S.App.D.C. 48, 54, 654 F.2d 763, 769 (1980), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 209 (1981); *accord United States v. Beechum,* 582 F.2d 898, 915 (5th Cir.1978) (en banc) (before trial, "[i]n effect all the other elements of the crime ... were conceded"), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

Still other courts, evincing skepticism about anticipating a defense, have made the general rule absolute. These courts have altogether precluded other crimes evidence from the government's case-in-chief. Such evidence may not be used to show intent, for example, "unless and until the defendants affirmatively [have] contested their intent" by presenting a defense that calls intent into question. *United States v. Miller,* 508 F.2d 444, 450 (7th Cir.1974) (citing *United States v. Fierson,* 419 F.2d 1020, 1023 (7th Cir.1969)). "It is only after the defense is presented that the trial judge can know if intent or knowledge or any exception to the exclusion rule is truly a disputed issue in the trial." *Adderly,* 529 F.2d at 1182.

### (2)

The general rule precluding other crimes evidence in the government's case-in-chief is typically invoked because the trial court will usually not be in a position to decide whether the probative value of that evidence outweighs the prejudice to the defendant until the court has heard not only the rest of the government's case but also the defendant's response. *See Beechum,* 582 F.2d at 915; *United States v. Benedetto,* 571 F.2d 1246, 1249 (2d Cir.1978). In this connection, some courts have observed that when other crimes evidence is relevant to intent, it is especially important for the trial court to await the defense case before deciding whether to admit the evidence, because proof of intent

> may be inferable from the act itself. In such case, unless the defense specifically raises lack of intent as a defense, the prejudice to the defendant of evidence of similar acts may outweigh its probative value. And even where the crime requires specific criminal intent not readily inferable, the defendant might not raise lack of intent as a defense ... or he [or she] might stipulate to the existence of intent if the jury finds the other elements of the offense.

*United States v. Danzey,* 594 F.2d 905, 914 (2d Cir.) (citations omitted), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979); *see United States v. Mohel,* 604 F.2d 748, 753–54 (2d Cir.1979) (other crimes evidence must be excluded when unequivocal defense stipulation removed intent and knowledge as issues in case).

Other courts, however, have announced an exception to their general agreement

that other crimes evidence to establish intent should be reserved to rebut the defense case. They have permitted such evidence in the government's case-in-chief when "'intent is not normally inferable from the nature of the act charged.'" *United States v. Webb*, 625 F.2d 709, 710 (5th Cir.1980) (quoting *Ring*, 513 F.2d at 1009). Commonly, this exception is addressed to specific intent crimes and thus, in effect, permits other crimes evidence in the government's case-in-chief simply because specific intent is an element of the crime charged. *See, e.g., United States v. Weidman*, 572 F.2d 1199, 1202 (7th Cir. 1978).

The concern of these courts appears to be that if the other crimes evidence is excluded from the government's case-in-chief and the defense rests without presenting evidence, the government may have failed to prove the required intent. There is an answer, however, consistent with the general rule limiting other crimes evidence to the government's rebuttal case.

> The prosecution [should] rest, reserving, out of the presence of the jury, the right to reopen to present such evidence in the event the defendants rest without introducing evidence. If that occurs and the evidence is subsequently admitted, the trial judge can inform the jury that court procedure obliged the prosecutor to defer its similar act evidence, thereby avoiding any unwarranted inference that the prosecution was desperately using a last-minute tactic.

*United States v. Figueroa*, 618 F.2d 934, 939 n. 1 (2d Cir.1980). If the government does reopen, then the court should permit the defense to reconsider whether it still wishes to rest its case without introducing evidence. J. Weinstein & M. Berger, 2 WEINSTEIN'S EVIDENCE ¶ 404[09] (1985). Accordingly, there is no reason why the general rule against admissibility of other crimes evidence in the government's case-in-chief should not apply to specific intent, as well as general intent, crimes. As *Figueroa* suggests, the government can pro-

tect itself while the trial court awaits the defense case to determine whether, on balance, other crimes evidence will be more probative than prejudicial.

**(3)**

While this court has not expressly adopted an absolute rule precluding other crimes evidence in the government's case-in-chief, we have certainly embraced that approach. In *Willcher*, 408 A.2d 67 (D.C. 1979), we considered an other crimes issue where the defendant was charged with unlawfully soliciting a fee from a Criminal Justice Act (CJA) client. D.C. Code § 11–2606(b) (1981). The defendant testified, to the contrary, that he had asked for a check from his client to hire a co-counsel who might have more influence in bargaining with the prosecutor's office. Relying on the intent exception, we sustained admissibility of evidence that the defendant previously had solicited a fee from a CJA client. We stressed that the prosecutor had "properly waited until cross-examination," after the defendant had "opened the door," to elicit the defendant's admission of this prior conduct. *Id.* at 76. Citing the Seventh Circuit's approach in *Miller*, 508 F.2d at 450, we warned that the intent exception in *Drew* "has a capacity to emasculate the other crimes rule, since intent is generally an element of the offense charged." *Willcher*, 408 A.2d at 76. Then, citing that same circuit in *Fierson*, 419 F.2d at 1023, we emphasized that "intent must be a material or genuine issue in the case, not merely a formal issue in the sense of entitlement to an instruction." *Willcher*, 408 A.2d at 76.

We therefore have come very close to announcing a rule (and perhaps implicitly we did) precluding the government from introducing other crimes evidence in its case-in-chief to prove intent. This, of course, is essentially an impeachment approach, the difference being that the previous crimes used to refute the defense come in as substantive evidence of intent accompanied by an appropriate limiting instruction. But this approach has the virtues of

faithfulness to *Drew*'s basic message and of assuring that other crimes evidence is not admitted until the court is in a position to weigh probative value against prejudice by reference to the defense case.

(4)

█ We need not definitively resolve whether, in this jurisdiction, the government may never introduce other crimes evidence in its case-in-chief to help prove intent. We are aware of special considerations applicable to prosecutions under D.C. Code § 22–2701 (1985 Supp.), in addition to the more general concerns outlined above. We therefore conclude, more narrowly, that no evidence of a defendant's prior acts of inviting for purposes of prostitution is admissible in the government's case-in-chief to prove specific intent under § 22–2701.

First, unlike many types of crimes, inviting for purposes of prostitution is commonly tried, under our recently amended statute, primarily by reference to circumstantial evidence. *See, e.g., Ford v. United States*, 498 A.2d 1135 (D.C.1985). Thus, absent direct evidence of intent embracing all elements of the charged offense, a prior conviction of the same crime, if admissible, inevitably will have a powerful effect on the fact-finder. The likely result is a finding of intent as to the unsubstantiated elements of the crime by reference solely to the prior convictions, not to the evidence in the case on trial.

Second, many of the actions used, circumstantially, to prove a case under § 22–2701 are actions which many persons engage in every day without criminal implications: waving at cars, stopping pedestrians, yelling various pat phrases at passersby. Therefore, a judicial gloss on § 22–2701 permitting other crimes evidence to help prove intent would create a substantial danger that acts which apparently would be innocent if performed by citizens without a record of commercialized sex would become criminal acts if performed by citizens previously convicted of that crime. As a consequence, this use of a prior record of inviting for purposes of prostitution very likely would convert § 22–2701 into an unconstitutional status offense.

Three appellate courts have ruled that use of prior acts of commercial sexual solicitation to help prove a subsequent charge is unconstitutional. Alaska, Missouri, and Oklahoma have municipalities which had ordinances virtually identical to one another banning loitering "in or near any street or public place in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution." *Christian v. City of Kansas City*, 710 S.W.2d 11, 12 (Mo.Ct.App.1986); *see Brown v. Municipality of Anchorage*, 584 P.2d 35, 36–37 (Alaska 1978); *Profit v. City of Tulsa*, 617 P.2d 250, 251 (Okla.Crim.App. 1980). Each ordinance specified that *one* of the circumstances which could be considered in "determining whether such purpose is manifested" is whether the accused loiterer "is a known prostitute or panderer," defined (in Kansas City) as "any person who, within one year prior to the date of arrest for violation of this section, has, within the knowledge of the arresting officer, been convicted of violating any law defining and punishing acts of soliciting, committing, or offering or agreeing to commit prostitution." *Christian*, 710 S.W.2d at 12; *see Brown*, 584 P.2d at 36–37 (defines "known prostitute or panderer" by reference to convictions within five years of arrest); *Profit*, 617 P.2d at 251 (no stated statutory definition of "known prostitute or known pimp"). All three courts declared the ordinances unconstitutional because they permitted reliance on the status of being a "known prostitute or panderer" (or "known pimp") as part of the proof of intent required for conviction. *See Brown*, 584 P.2d at 37 ("unconstitutionally vague"); *Christian*, 710 S.W.2d at 14 ("unconstitutionally overbroad"); *Profit*, 617 P.2d at 251 (unconstitutionally "overbroad").

These courts made clear that, although the ordinance did not directly make criminal the "mere status of a prostitute or pimp," that status, by permission of the statute, was "a circumstance indicating the intent of a person loitering." *Profit*, 617 P.2d at 251. Therefore,

> plainly the circumstance can control whether the ordinance has been violated. In this sense, 'status' becomes not the offense but, rather, an element of the offense. [Citation omitted.]

*Id.; accord Brown*, 584 P.2d at 37; *Christian*, 710 S.W.2d at 13.[2]

We perceive no difference between statutory permission to use prior acts of sexual solicitation as evidence of intent in the government's case-in-chief and a court's evidentiary ruling that permits the same thing. In either case, "plainly the circumstance can control whether the ordinance has been violated." *Profit*, 617 P.2d at 251.

In sum, in addition to the traditional concern about introducing prior criminal acts into the government's case-in-chief to prove intent, there is a special reason not to do so in a § 22–2701 case. Given its predictably disproportionate impact on a factfinder, the admission of prior acts of unlawful sexual solicitation will be inherently more prejudicial to the defendant than legitimately probative for the government unless and until the defendant actually contests an issue for which other crimes evidence may be admissible. Accordingly, we conclude the government may not introduce prior acts of inviting for purposes of prostitution into its case-in-chief, in order to help establish the intent of a person accused of that same crime. Were we to decide otherwise, we would risk engrafting an unconstitutional element onto a statute which does not now contain that particular vice.

**D.**

The trial court therefore erred as a matter of law in permitting the government to introduce appellants' prior convictions of commercial sexual solicitation in the government's case-in-chief. We must next determine whether this error requires reversal of appellants' convictions. *See Johnson v. United States*, 398 A.2d 354, 366, 367 (D.C.1979). That question is subsumed under, and has a significant bearing on, appellants' more fundamental contention that the evidence was insufficient for conviction—the contention to which we now turn.

**III.**

Appellants contend the trial court erred in denying their motions for judgment of acquittal because the evidence was insufficient to prove beyond a reasonable doubt that their conduct was "for the purpose of prostitution." If appellants are correct, they are entitled to a reversal on this ground, and the double jeopardy clause would bar retrial. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

**A.**

The government must prove beyond a reasonable doubt each element of the crime. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). We conclude there was insufficient evidence of at least one element: that appellants were offering sex "in return for a fee." D.C. Code § 22–2701.1(1) (1985 Supp.)

D.C. Code § 22–2701 (1985 Supp.) provides:

> It shall not be lawful for any person to invite, entice, persuade, or to address for the purpose of inviting, enticing, or persuading, any person or persons 16 years

---

2. *See also City of Detroit v. Bowden*, 6 Mich.App. 514, 519, 149 N.W.2d 771, 773 (1967) (ordinance making it unlawful for a "known prostitute or panderer" repeatedly to stop or attempt to stop any pedestrian or motor vehicle by hailing, whistling, or other bodily gesture on public sidewalk or other public place held unconstitutionally vague, a denial of due process, and a violation of privilege against self-incrimination).

of age or over in the District of Columbia, *for the purpose of prostitution,* or any other immoral or lewd purpose, under a penalty of not more than $300 or imprisonment for not more than 90 days, or both. Inviting, enticing, or persuading, or addressing for the purpose of inviting, enticing, or persuading for the purpose of prostitution includes, but is not limited to, remaining or wandering about a public place and: (1) Repeatedly beckoning to, repeatedly stopping, repeatedly attempting to stop, or repeatedly attempting to engage passersby in conversation; (2) stopping or attempting to stop motor vehicles; or (3) repeatedly interfering with the free passage of other persons; *for the purposes of prostitution.* [Emphasis added.]

According to D.C. Code § 22–2701.1(1) (1985 Supp.),

"Prostitution" means the engaging, agreeing to engage, or offering to engage in sexual acts or contacts with another person *in return for a fee.* [Emphasis added.]

Thus, the government was required to prove beyond a reasonable doubt four elements of the crime: that each appellant in the District of Columbia (1) invited, enticed, or persuaded (or addressed for the purpose of inviting, enticing, or persuading) (2) a person age 16 or over (3) for the purpose of engaging, agreeing to engage, or offering to engage in sexual acts or contacts with that person (4) in return for a fee.

Viewing the evidence in the light most favorable to the government, as we must, and making no distinction between direct and circumstantial evidence, *see, e.g., United States v. Covington,* 459 A.2d 1067, 1070–71 (D.C.1983), we conclude the government has satisfied its burden to prove the first two elements of the crime as to both appellants, as well as the third element at least as to Kurlansik. When other crimes evidence is eliminated, however, the government has failed to prove the fourth element, "in return for a fee," as to either appellant.

The officers testified that they had observed appellants at 14th and I Streets, N.W. waiving, yelling, and attempting to pull over moving vehicles, as well as approaching three pedestrians. This evidence is sufficient, when viewed in the light most favorable to the government, to prove the first element: appellants were inviting, enticing, or attempting to persuade. The officers' testimony that the occupants of the vehicles, as well as the pedestrians, appeared to be over 16 years old is sufficient to prove the second element.

At this juncture, the evidence against each appellant diverges. The evidence that Kurlansik grabbed the groin area of a pedestrian is sufficient to prove the third element of the crime as to her; one may reasonably infer that Kurlansik approached the pedestrian for the purpose of engaging in sexual acts or contacts.

There is little if any evidence, however, that Graves addressed anyone for the purpose of engaging, agreeing to engage, or offering to engage in sexual acts or contacts. The government urges us to consider the fact that Graves' actions were observed in an area with a high rate of prostitution and thus were probative of her purpose to engage in sexual acts. We have substantial reservations about this argument. To say that conduct in a high crime area is, inferentially, criminal when the same conduct in a low crime area would, inferentially, be innocent, raises serious constitutional questions concerning equal protection of the laws, vagueness, and the right to travel. *See Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (presence in drug trafficking area does not create reasonable suspicion for *Terry* stop); *cf. Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (statute requiring person who loiters in high crime area to provide "credible and reliable" identification is unconstitutionally vague and also may implicate "constitutional right to freedom of movement"). We decline to resolve this issue as to Graves, however, because the government in any

event has failed—as to either appellant—to prove the fourth element: consideration.

Except for inferences to be drawn from prior convictions, there is no record evidence that appellants offered or attempted to engage in sex in return for a fee. The officers overheard no conversation in which either appellant expressly or impliedly mentioned financial consideration. Nor did the officers see any money tendered or exchange hands. Nor did the government produce any other witness, such as a passing motorist or a pedestrian, who could attest to appellants' request for, or expectation of, a fee.

The government replies that the totality of the observed events—appellants' presence in an area known for prostitution, their repeated beckoning to passing motorists and pedestrians, their focus exclusively on males, and their jointly impeding a male pedestrian whom Kurlansik grabbed in the groin while Graves stood next to her—can create only one legitimate inference: that appellants were soliciting for the purpose of prostitution. We disagree. Absent appellants' prior convictions, the totality of the circumstances reasonably implies, at most, that Kurlansik was, and Graves may have been, soliciting sexual acts. However, absent evidence of consideration— e.g., an overheard conversation with language implying sex for money, or an observation of money tendered or exchanging hands—the evidence is insufficient to prove

beyond a reasonable doubt that appellants' conduct was for a commercial purpose.[3]

Because the only possible record basis for inferring a commercial intent is appellants' prior convictions, this other crimes evidence in the government's case-in-chief—if permitted—would determine the outcome; appellants would be convicted on their status as ex-offenders. Plainly, therefore the trial court's error in admitting that evidence is not merely an abuse of discretion requiring reversal and remand for a new trial, as would usually be the case. It is an abuse of discretion requiring reversal with instructions to enter judgments of acquittal, barring retrial, since the evidence that remains is insufficient for conviction. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).[4]

**B.**

That would end the matter but for the government's argument that evidentiary sufficiency in this case is controlled by *Ford v. United States,* 498 A.2d 1135 (D.C. 1985). We agree that the facts in *Ford* are virtually indistinguishable from those presented here. Susan Ford was observed for an hour and a half at 14th and L Streets, N.W. repeatedly beckoning to male motorists and pedestrians; she had conversations with four or five motorists and fifteen to twenty pedestrians. *Id.* at 1136–37. The police heard Ford say only "hey" or "hey, babe." *Id.* at 1136. Moreover,

---

**3.** We note that, if the officers had observed a male repeatedly beckoning to passing female motorists and pedestrians and grabbing the groin area of a woman, a jury very likely would find the male guilty of simple assault. But, absent some evidence of a fee request, a jury would not be likely to infer that the male was soliciting for the purpose of prostitution, since that inference would not comport with common assumptions about typical male and female behavior. We are convinced, therefore, that any inference from this record that the female appellants *were* soliciting for prostitution would result in convictions based on common assumptions that would exonerate males in a similar situation, even though the statute does not distinguish between male and female behavior.

**4.** Unlike Kurlansik, Graves put on a defense that included an admission of her previous activities as a prostitute. In a sufficiency challenge, we must review all the evidence, not just the government's case-in-chief, when the accused puts on a defense. *See Franey v. United States,* 382 A.2d 1019, 1022 (D.C.1978). We do not agree with the government, however, that Graves' admissions erase any error in permitting the government to introduce her prior convictions. We may not assume that Graves would have testified if she did not have to meet the additional burden of prior convictions already introduced by the government. We may not, in fairness, hold Graves accountable for admissions that were merely cumulative of the government's prior, improper proof.

the court's recitation of facts in *Ford* does not indicate that there was any evidence of financial consideration. The *Ford* court, nonetheless, found the evidence sufficient to convict appellant under § 22–2701.

The division of this court in *Ford*, however, was not squarely presented with the question of a "fee" that we must consider here. Susan Ford presented only two issues on appeal: (1) the facial constitutionality of § 22–2701, as amended, and (2) "whether a prostitution conviction can be sustained unsupported by any actual evidence of solicitation." Record of case No. 83–1107. The court interpreted this second issue to present the question whether sexual solicitation (the first and third elements of the offense as we have divided the crime) may be proved by circumstantial evidence, *i.e.*, without any evidence of the content of the solicitation conversation.

*Ford* does not even discuss, let alone purport to decide, the fee issue. Although the opinion quotes D.C. Code § 22–2701.1 in a footnote, *Ford*, 498 A.2d at 1137 n. 1, it does not mention whether there was any record evidence of fees or other consideration. Instead, *Ford* decides only that, under the amended statute, there need be no direct evidence of the content of the conversation to prove a sexual solicitation; the trier of fact may, in a proper case, infer such solicitation from all the surrounding circumstances. *Id.* at 1137–38. With this proposition we cannot disagree. However, § 22–2701.1 requires at least some evidence, direct or circumstantial, that the accused engaged, agreed to engage, or offered to engage in sexual acts or contacts with another person "in return for a fee."

This statutory requirement of evidence of a commercial purpose is evident from *Dinkins v. United States*, 374 A.2d 292 (D.C.1977) (en banc), upon which *Ford* relied. In *Dinkins*, the full court, in affirming a conviction under § 22–2701, noted that it does not matter which party "broaches the commercial nature of the transaction. It is sufficient that an understanding emerges that a commercial venture was contemplated when the sexual availability was made apparent." *Id.* at 296. But the commercial element must be proved. We then noted that "[p]roof of particular language or conduct is not necessary to establish the offense." *Id.* Thus, solicitation for the purpose of prostitution may be established by circumstantial, as well as direct, evidence. In reviewing the evidence in *Dinkins*, we found a combination of factors sufficient for sustaining the conviction. Specifically, "[1] appellant's attire, [2] her prolonged presence on the street corner, [3] her approach to a complete stranger, [4] her extremely suggestive verbal responses to the officers, [5] her prompt discussion of financial terms, and [6] her ready arrangement for a room [were] legally sufficient, when taken together, for a fact finder to conclude guilt beyond a reasonable doubt." *Id.* In the present case, however, when we give the government the benefit of every possible doubt, there is evidence only of the second and third and, perhaps, the first factors listed in *Dinkins* (and, as to Kurlansik, by analogy the fourth). Without more, appellants can be guilty of no crime.

All the District of Columbia cases on which the division in *Ford* relied had some evidence of solicitation to perform sexual acts in exchange for money. *See Eissa v. United States*, 485 A.2d 610, 611 (D.C. 1984) (appellant said he would pay undercover officer $10 for a "screw"), *cert. denied*, —— U.S. ——, 106 S.Ct. 544, 88 L.Ed.2d 474 (1985); *Dinkins*, 374 A.2d at 294–95 (appellant offered to do anything officer wanted for $10 plus $3 for the room); *Curran v. United States*, 52 A.2d 121, 122 (D.C.1947) (appellant agreed to give officer some "loving" in return for $35, the price of a new dress).

In fact, we have found no case in the District of Columbia, until *Ford*, which has upheld a conviction under § 22–2701 without some reference to financial consideration. *See, e.g., Eissa*, 485 A.2d at 611; *Washington v. United States*, 475 A.2d 1127, 1129 (D.C.1984) (appellant asked offi-

cer if he was there to screw and how much money he would spend); *Garrett v. United States,* 339 A.2d 372, 373 (D.C.1975) (solicitation to complete stranger was clear and specific, there was discussion of money, as well as "lucid description of the services [appellant] offered"); *United States v. Smith,* 330 A.2d 759 (D.C.1975) (appellant asked officer if he wanted to "go out" for $25 and indicated they should go to his room); *Wajer v. United States,* 222 A.2d 68 (D.C.1966) (appellant agreed to do "anything [the officer] wanted" for $21, accompanied officer to motel room, and began to undress); *Golden v. United States,* 167 A.2d 796, 797 (D.C.1961) (appellant told officer she "would do anything ... and make it worth his while" in return for $20); *Price v. United States,* 135 A.2d 854, 855 (D.C.1957) (direct solicitation and money changed hands); *Curran,* 52 A.2d at 122; *Hall v. United States,* 34 A.2d 631, 632 (D.C.1943) (verbal invitation, prompt discussion of financial terms, and ready arrangement for a room).

Typically, when proof of financial consideration is lacking—and that issue is raised—the conviction has not stood. For example, in *Williams v. United States,* 71 U.S.App.D.C. 377, 110 F.2d 554 (1940), the United States Court of Appeals for the District of Columbia Circuit overturned a conviction for unlawfully inviting a person for the purpose of prostitution because "there was no proof that defendant's purpose was among those which the statute prohibits." *Id.,* 110 F.2d at 554. The government introduced evidence only that defendant had approached a policeman's car and asked him "if he wanted a date"; that defendant also had asked the officer whether she should get into the car; and that, after she had entered the car, she had asked the officer "if he wanted to drive and talk." *Id.,* 110 F.2d at 554. According to the court, the defendant's "purpose was at worst ambiguous," because "[t]here was no evidence that the parties were strangers to each other; and even if they were, the proposed 'date' did not necessarily include prostitution." *Id.,* 110 F.2d at 554; *accord*

*City of Portland v. Miller,* 62 Or.App. 145, 659 P.2d 980, 982 (1983) (insufficient evidence of specific intent "to solicit a prohibited act for consideration").

Only the commercial aspect of the transaction protects the statute against a successful constitutional challenge that it infringes upon the rights to privacy and free speech. *See Wood v. United States,* 498 A.2d 1140, 1142 (D.C.1985); *United States v. Moses,* 339 A.2d 46, 51–52 (D.C.1975), *cert. denied,* 426 U.S. 920, 96 S.Ct. 2624, 49 L.Ed.2d 373 (1976). As we recently stated, the "plain language" of the solicitation statute, D.C. Code § 22–2701 (1985 Supp.), "is specifically addressed to 'the stemming of commercialized sexual solicitations' and goes not a millimeter further." *Wood,* 498 A.2d at 1144 (quoting *Moses,* 339 A.2d at 54). The government's evidence against Graves and Kurlansik fails to prove this commercial element.

### IV.

We conclude that, in a prosecution under D.C. Code § 22–2701 (1985 Supp.) for inviting for the purposes of prostitution, the government may not, in its case-in-chief, introduce evidence of the accused's prior acts prohibited by § 22–2701 as substantive evidence of intent to commit the crime. We also conclude that, on the record here—stripped of the other crimes evidence—the government failed to introduce evidence sufficient to prove that appellant solicited "sexual acts or contacts with another person in return for a fee." *Id.* § 22–2701.1. Accordingly, the judgments of convictions are reversed with instructions to enter judgments of acquittal.

*So ordered.*