**John D. WILLIAMS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 9034.**

District of Columbia Court of Appeals.

Submitted July 10, 1975.

Decided July 31, 1975.

Roger E. Zuckerman, Washington, D. C., appointed by this court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., and John A. Terry, James F. McMullin and William M. Brodsky, Asst. U. S. Attys., were on the brief for appellee.

Before FICKLING, KERN and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted of soliciting for prostitution in violation of D.C.Code 1973, § 22–2701. He contends that two evidentiary rulings of the trial court improperly limited his efforts to develop a defense of entrapment. We disagree, and affirm.

On the night of October 18, 1974, Metropolitan Police Department Morals Division Officer Mary Williams and her partner, Officer George Johnson, both dressed in plain clothes, were deployed in the area of 14th and L Streets, N.W. Officer Williams was on a corner; Officer Johnson was a short distance away. At approximately 10:40 p. m., Officer Williams observed appellant speak with a female impersonator who was standing a few feet from her. Appellant then turned to Officer Williams. According to the officer, appellant asked how much she charged. When pressed for his own assessment, ap-

pellant, using the vernacular of the locale, named a price. When queried as to what he expected in return, appellant responded with street talk suggesting sexual intercourse.[1] Officer Williams, assisted by her partner, thereupon placed appellant under arrest for soliciting.

Appellant's version of the encounter was quite different. He testified that while on his way to a restaurant for dinner, he was approached by the female impersonator who asked him if he was "sporting". As appellant brushed off that incipient proposition, the impersonator allegedly pointed to Officer Williams and said that they all could go over to the house of his "friend". Appellant then asked the officer her name. As they started to walk along L Street together, he was arrested. The trial court credited the officer's testimony, and found appellant guilty.

Appellant does not challenge the trial court's credibility determination. Rather, his claims are based upon two rulings by the trial court during the cross-examination of Officer Williams by appellant's able trial counsel. Counsel sought to establish a defense of entrapment. He made repeated efforts to elicit information from Officer Williams concerning her demeanor, intent, and activities at the time of the alleged solicitation, and as to her training and orders prior to undertaking that particular duty. Basically, trial counsel sought to have the officer acknowledge that she had been assigned to that location to be solicited for prostitution. The answers to his questions were needlessly guarded. Counsel persevered, however, apparently in the belief that showing conduct by the officer which was intended to in-

---

1. The pertinent dialogue went roughly as follows:

Appellant: How much do you charge?
Officer Williams: For what?
* * * * *
Appellant: . . . Come on now, how much do you charge?
Officer Williams: What's it worth to you?
Appellant: How about a dime?

Officer Williams: A dime, what do you want for a dime?
Appellant: I just want to bust a few nuts, baby.

Appellant does not dispute the meanings of the colloquialisms as understood by the policewoman and as accepted by the trial court. (The term "dime" means ten dollars.)

duce appellant to state both a price and the sexual activity sought to be performed could establish the defense of entrapment. When it became apparent to the trial court that the probe of Officer Williams had yielded all the information that could be expected under the circumstances, the court halted counsel's line of cross-examination. Appellant contends this improperly foreclosed his defense.

Appellant makes the same claim concerning the trial court's determination that it would not issue a subpoena, or permit a recess beyond the impending lunch hour, in order to enable appellant to procure the appearance as a witness of Officer Williams' commanding officer. Appellant's asserted purpose for such a request was to establish and enhance his entrapment defense (1) by obtaining testimony to clarify the contradictions in the officer's statements, (2) by gaining information pertinent to entrapment which the officer did not provide, and (3) by impeaching the officer's testimony on those details with respect to which she did testify. The court denied appellant's request, ruling that good cause had not been shown for the issuance of the subpoena.

■ Notwithstanding defense counsel's diligent efforts to develop what he contended to be relevant information, even had he succeeded he would not have established a defense of entrapment. The Supreme Court has put to rest what had been the recurring minority theory of entrapment, under which the defense could be established on a showing of police conduct which purportedly induced or instigated the commission of a crime merely by offering an opportunity to do so or by "playing along" with one considering an illegal act. In *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), the Court held that only where creative

governmental activity instills the criminal notion in an otherwise innocent individual may an entrapment defense properly lie. A defendant claiming entrapment must be more than unaware of the fact that the subject activity will lead to his arrest; he must be wholly without criminal intent when he joins the police in the commission of a crime. The Court stated:

". . . the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution," . . . Nor will the mere fact of deceit defeat a prosecution . . ., for there are circumstances when the use of deceit is the only practicable law enforcement technique available. It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play. [411 U.S. at 435–36, 93 S.Ct. at 1644 (citations omitted).]

■ Appellant does not maintain that Officer Williams "implanted the criminal design" in his mind to solicit her for prostitution. The officer's role was limited to her presence and an exploration of appellant's purposes. If the officer had broached the terms of an agreement between herself as a supposed prostitute and appellant as an unwitting customer, then she, rather than appellant, would have done the soliciting. If that had occurred, appellant would not be guilty, not because he had been entrapped into committing the crime, but because he had not committed the offense at all. Since appellant does not contend that those were the facts and suggests no other possible circumstances under which entrapment properly could lie, the rulings which he claims erroneously inhibited his inchoate entrapment defense were of no prejudice to him.[2]

2. We do not mean to foreclose the defense of entrapment in every possible scenario giving rise to a solicitation charge. In the instant circumstances, however, where appellant confirmed his encounter with Officer Williams (and the one with the female impersonator), by his own testimony was conversant with the jargon of the solicitation bargaining process,

*United States v. Russell, supra,* suggests one other possible approach which our own review persuades us is of no utility to appellant. The Supreme Court, citing *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), alluded in *Russell* to the possibility of "a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction". 411 U.S. at 431–32, 93 S.Ct. at 1643. Appellant has advanced nothing in support of such a proposition, and we find nothing in the record which could justify any such contention.

Affirmed.

and, most importantly, did not claim to be an "unwary innocent" with no intent to engage in the solicitation process (intent actually to engage in prostitution being irrelevant), we find no basis on which to premise such a defense.