Diane DINKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 7303.

District of Columbia Court of Appeals.

Argued En Banc May 10, 1976.

Decided May 10, 1977.

Rehearing En Banc Denied
Sept. 13, 1977.

---

8. Because of our disposition of this case we need not address Chatelain's protective cross-appeal.

Marvin M. Waldman, Chevy Chase, Md., appointed by this court, for appellant.

Stephen R. Spivack, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Stuart M. Gerson, and Nicholas Gilman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, FICKLING,* KERN, GALLAGHER, NEBEKER, YEAGLEY, HARRIS and MACK, Associate Judges, REILLY, Chief Judge, Retired, and PAIR, Associate Judge, Retired.

NEBEKER, Associate Judge:

■ This is an appeal from a conviction under D.C.Code 1973, § 22–2701, for what popularly but inaccurately has been called soliciting for prostitution. The case was originally submitted without oral argument to a division consisting of Judges Fickling, Mack and Pair (retired). In the usual course, and according to our intracourt practice, a proposed opinion of the court, authored by Judge Fickling, was circulated to the nondivision judges. Judge Pair circulated. a dissent. The division majority proposed to reverse for lack of evidence on a rationale to be discussed herein. A majority of the judges in regular active service sua sponte withheld release and publication of the proposed opinion and set the case for en banc consideration.[1] We affirm the conviction, and, in doing so, reject the notion that the statute is so drafted as to make critical the questions of who makes the first contact or overture (visual or verbal) and who first broaches the subject of money or gain for such services. No issue of entrapment is raised and therefore our holding is confined to evidentiary sufficiency.[2]

The facts of this case are not atypical although our dissenting colleagues strain to view them as such. A covert policeman, in his private car, was cruising the area where Dinkins was standing on the sidewalk. He slowed down, said "Hi", and waved to her. She had been standing there "for a long time"—the officer had driven "around the corner a couple of times." She was dressed in a red sweater, a blue miniskirt, and corduroy knee-length boots. She came over to the car and, as she put her head through the open window, the officer said, "What are you doin[g]?" She replied, "What do you want to do?" When he inquired, "What do you do?", she responded, "Anything you want". He then inquired as to her cost and she responded, "Ten and three" —meaning ten dollars for herself and three dollars for the room. He asked where they would go and she said, "Right down the street." There were tourist homes in the area. The officer got out of the car and said, "Well, look . . . [w]hat do I get

---

* Associate Judge Fickling participated in the oral argument of this case, and his disposition was to join in the dissenting opinion of Associate Judge Kelly. He died on March 6, 1977, before the publication of the opinions.

1. D.C.Code 1973, § 11–705(d), provides that the court at rehearing en banc shall consist of all judges in regular active service, and if a retired judge was on the division he may sit as a judge on the en banc court. Judge Pair elected to sit and we are thus a ten-judge court for purposes of this case.

2. As to entrapment, the attention of the reader is invited to the opinions in *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).

for my money?" She repeated, "Anything you want". When asked what she did, she said, "Well, you know, what is it that I don't do?" He responded, "Well, you know, a lot of girls have certain hangups about certain things, right?" She responded, "Well, I don't have any hangups." She then stated she would "french, fuck, anything you want." They got into the car and he drove off after signaling his nearby partner to close in for an arrest which promptly occurred.

The gravamen of appellant's contention is that "no solicitation [was] made for prostitution since Miss Dinkins' conduct was responsive [to the officer] rather than [initiatory]", and that in any event the element of money or gains fails of proof since the officer mentioned that subject first. The proposed division opinion agreed with her.

We begin our analysis by application of the most fundamental of axioms. We look to what the statute says.[3] D.C.Code 1973, § 22–2701, provides:

> It shall not be lawful for any person to invite, entice, persuade, or to address for the purpose of inviting, enticing, or persuading, any person or persons sixteen years of age or over in the District of Columbia, for the purpose of prostitution, or any other immoral or lewd purpose, under a penalty of not more than $250 or imprisonment for not more than ninety days, or both.

It should be noted at the outset that neither the word "solicit" nor the word "solicitation" is used in the statute. This omission becomes crucial in view of appellant's and the dissent's extensive reliance on the word in stating their major premise that an initial or active effort to prevail upon a person is required to constitute an offense under the statute. Whatever may be the merits

of an argument that a solicitation requires such an initial, active effort as opposed to a merely responsive one, this issue is simply not present here. Therefore, so much of appellant's argument as focuses on the definitional limits and innuendoes of the word "solicitation" is not relevant to the disposition of this case.

■ A survey of the fifty states' statutes dealing with prostitution reveals an extensive use of the word "solicit".[4] In contrast, the District of Columbia statute uses the phrase "address for the purpose of" (emphasis supplied). Address is neutral in the sense of being active or passive, initiatory or responsive in the effectuation of a purpose. One definition of "address" in Webster's Third New International Dictionary 24(6a) (1971) is: "to speak, write or otherwise communicate directly to." "Speaking or communicating directly to" may be done responsively. It carries with it no element or overtone of active initiation of a conversation or transaction. The word "address" in the statute, therefore, removes the suggestion that an initial, active effort to engage someone in a conversation or transaction involving prostitution is a prerequisite to guilt.

■ This conclusion is enhanced by the use of the word "entice" in the statute. An enticement also does not require an active, initiatory effort but can occur in a responsive manner. One meaning of "entice" is: "to draw on by arousing hope or desire: ALLURE, ATTRACT . . . TEMPT". Webster's Third New International Dictionary, supra at 757. See also Bayouth v. State, 294 P.2d 856, 863 (Okl.Cr.1956). The trial judge reasonably could have concluded that appellant's comment, "I'll do anything you want to do", was intended to tempt or

---

3. The Supreme Court recognized long ago, "the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

4. See, e. g., Ala.Stat. § 11.40.230 (1962); Ark. Stat.Ann. § 41–3202 (1947); Cal.Penal Code § 647 (1969); Conn.Stat.Ann. § 53a–83 (1958); Fla.Stat.Ann. § 796.07 (1943); Iowa Code Ann. § 724.2 (1946); Md.Ann.Code, art. 27, § 15 (1957); Mich.Comp.Laws § 750.448 (1948); N.D.Century Code § 12.1–29–03 (1973); Okla. Stat.Ann. 21 § 1029b (1956); R.I.Gen.Laws § 11–34–5 (1956); Tex.Penal Code § 43.02 (1973); and W.Va.Code Ann. § 61–8–5 (1966).

to draw on by arousing hope or desire and therefore operated as an enticement. One can entice in this manner for the purpose of a commercial sex act without being the one to initiate the overall conversation or transaction. Enticement can occur at any point in a conversation and, therefore, even responsive conduct or speech can ripen into an enticement.

■ Once there is an enticement or an address for the purpose of enticement, it becomes unimportant who broaches the commercial nature of the transaction. It is sufficient that an understanding emerges that a commercial venture was contemplated when the sexual availability was made apparent. This court has specifically stated that an individual could be found guilty in a case in which it is the officer rather than the person charged who asks how much it would cost. *United States v. Smith*, D.C. App., 330 A.2d 759, 761 (1975). Appellant in effect concedes this point by referring to *Smith* as a case in which the defendant's conduct was sufficient to constitute the offense. Yet, in *Smith*, the officer broached the topic of money.

As support for the proposition that where the officer broaches the sexual-commercial nature of the agreement the accused would not be guilty of the offense, the dissent and appellant rely upon *Williams v. United States*, D.C.App., 342 A.2d 367 (1975). But *Williams* deals with no issue beyond entrapment. *Williams* said basically that there is no entrapment if a defendant approaches an officer to solicit for prostitution. *Williams* does not purport to analyze the elements of the offense, nor, as already noted, is there an issue of entrapment in the present case.

■ Proof of particular language or conduct is not necessary to establish the offense. For example, an offer to perform a specific sex act is not necessary to complete the offense, *United States v. Smith, supra* at 761, although appellant in the instant case did refer to specific sex acts she would be willing to perform. Nor is it significant that the arresting officer makes the first overture. That fact was also present in

*Wajer v. United States*, D.C.App., 222 A.2d 68 (1966).

■ In the final analysis, it is a question of fact whether the acts and words of the defendant in general, viewed in the light of surrounding circumstances, constitute the enticing or addressing prohibited by the statute. *See Wajer v. United States, supra; Golden v. United States*, D.C.Mun.App., 167 A.2d 796 (1961); *Curran v. United States*, D.C.Mun.App., 52 A.2d 121 (1947). Were specific language or conduct determinative, as urged by appellant, every prostitute could know how to avoid arrest. Prostitutes would merely have to avoid broaching the subject of money or avoid initiating the conversation, leaving that to the other person. If that person were a covert law enforcement officer, he would soon become conspicuous by his doing likewise. Thus, his identity would be compromised before incriminating conduct reached offense level.

It can be seen that both minority opinions, if thoughtfully considered, would relegate to obsoletism the defense of entrapment in § 22-2701 prosecutions by placing reflexive reliance on who uttered the first word in the encounter. They would make it unnecessary for a determination ever to be made whether the accused was predisposed to violate that provision by substituting an arbitrary test of conversational timing masked behind an evidentiary sufficiency evaluation.

■ We hold that appellant's attire, her prolonged presence on the street corner, her approach to a complete stranger, her extremely suggestive verbal responses to the officer, her prompt discussion of financial terms, and her ready arrangement for a room are legally sufficient, when taken together, for a fact finder to conclude guilt beyond a reasonable doubt. Accordingly, the judgment of conviction is

*Affirmed.*

KELLY, Associate Judge, with whom GALLAGHER and MACK, Associate Judges, join, dissenting:

The sole issue on appeal is whether the evidence was sufficient to sustain the con-

viction.[1] The majority is of the opinion that it was, and therefore affirms. I disagree.

Specifically, appellant contends that the testimony of the arresting police officer concerning the street encounter establishes as a matter of law that the solicitation, if any, was not made by appellant. The majority explains in considerable detail that since D.C.Code 1973, § 22–2701, uses neither the word "solicit" nor the word "soliciting", so much of appellant's argument as focuses on the definitional limits and innuendoes of the word "solicitation" is irrelevant to the instant case. However, in *Riley v. United States*, D.C.App., 298 A.2d 228, *cert. denied*, 414 U.S. 840, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973), Judge Nebeker, writing for this court, made it clear in a due process void for vagueness context that the statute would be evaluated by the established principles governing solicitations generally at common law:

> Thus, it is appropriate to determine if similarity exists between the common-law and contemporary usage of the words used in § 22–2701. Historically, "urging, inciting, requesting, or advising another person to commit a crime" was in itself punishable as the crime of solicitation. However, only the solicitations of felonies and certain misdemeanors were punishable.
>
> .    .    .    .    .
>
> In light of the nature of the offense of solicitation as found at common law, § 22–2701 must necessarily be construed as limited to solicitations of acts which if accomplished would be punishable as a crime.    .    .    .    [298 A.2d at 230–31; citations omitted.]

The crime of solicitation is now universally recognized in the United States as a part of Anglo-American common law.[2] In Clark and Marshall, Law of Crimes (7th ed.1967), its characteristics are well set out at 219–23:

> Solicitation is a distinct common-law misdemeanor in which the act forbidden consists of the accused person's parol or written efforts to activate another to commit a criminal offense.
>
> .    .    .    .    .
>
> The gist of this offense is incitement. In brief, the gravamen of this common-law misdemeanor lay in counselling, enticing, or inducing another to commit a crime.    .    .    .

In addition, Perkins, Criminal Law (2d ed. 1969) at 582 states:

> The word "solicitation" in the sense of "criminal solicitation," is employed in the law as a general label to cover any use of words or other device by which a person is requested, urged, advised, counseled, tempted, commanded, or otherwise enticed or incited to commit a crime.

It is clear that the words "solicit", "entice", "persuade", and "invite" are constantly used interchangeably by courts and scholars in discussing solicitation. Hence, the majority's attempt to distinguish these terms is tenuous at best. The legislative history of D.C.Code 1973, § 22–2701, as well as the plain meaning of the words, clearly indicates that the statute under which appellant was charged prohibits *soliciting* prostitution.[3]

---

1. One is hard put to explain why such an issue deserves en banc consideration.

2. *See* Wechsler, Jones and Korn, *Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation and Conspiracy*, 61 Colum.L.Rev. 957 (1961); Hitchler, *Solicitations*, 41 Dick.L.Rev. 225 (1937); Curran, *Solicitation: A Substantive Crime*, 17 Minn.L.Rev. 499 (1933); Blackburn, *Solicitation to Crimes*, 40 W.Va.L.Q. 135 (1934).

3. The first statutory control over prostitution in the District of Columbia came on July 29, 1892, when Congress passed "an act for the preservation of the public peace and the protection of property within the District of Columbia." Act of July 29, 1892, ch. 320, 27 Stat. 322. Section 7 of that Act (27 Stat. 323) made it unlawful for "any prostitute or lewd woman to invite, entice, persuade, or to address for the purpose of inviting, enticing, or persuading any person or persons    .    .    .    for the purpose of prostitution    .    .    .    ." Section 7 of the 1892 Act was specifically repealed on August 15, 1935, when Congress passed "an act for the suppression of prostitution in the District of Columbia." Act of August 15, 1935, ch. 546, 49 Stat. 651, 652.

In order to convict appellant of the charged offense, it is my opinion that it must be affirmatively demonstrated that *she* invited, enticed, persuaded, or addressed *for* the purpose of inviting, enticing, or persuading any person over 16 years of age *for purposes of prostitution.* D.C.Code 1973, § 22–2701. Prostitution per se has neither been defined by statute or judicial decision in the District of Columbia, nor does there exist a common-law definition for the term. *See Bailey v. United States,* 69 App.D.C. 25, 98 F.2d 306 (1938); 73 C.J.S. *Prostitution* § 1 at p. 224 (1951). However, several solicitation cases in the District have indicated that the transaction must be of a commercial nature. *Garrett v. United States,* D.C.App., 339 A.2d 372, 373 (1975); *Hall v. United States,* D.C.Mun. App., 34 A.2d 631, 632 (1943). This court has further described solicitation for prostitution as an "invitation to commercial sexual intercourse." *United States v. Moses,* D.C.App., 339 A.2d 46, 52 (1975), *cert. denied,* 426 U.S. 920, 96 S.Ct. 2624, 49 L.Ed.2d 373 (1976). Accordingly, in order to convict a person of soliciting for purposes of prostitution, it must be shown that the one doing the soliciting actively seeks to engage in a sex act in exchange for something of value.

In my opinion, appellant did not "invite, entice, or persuade" the officer to engage in prostitution. The question is: Did *appellant address* the officer "for the purpose of inviting, enticing, or persuading" him for the purpose of prostitution? On the record before us, the only reasonable conclusion to be drawn from the undisputed facts is that the officer addressed the appellant for the purpose of prostitution. Officer Thomas made the first approach. He was the first to make suggestive inquiries and to indicate his interest in engaging in some activity.

Further, he initiated the discussion of the commercial nature of the transaction. The only obvious purpose of the officer in addressing the appellant was to determine if she was a prostitute. After he made the judgment that she was a prostitute, she was arrested. This court has commented in a similar case that "[i]f the officer had broached the terms of an agreement between herself as a supposed prostitute and appellant as an unwitting customer, then she, rather than appellant, would have done the soliciting. If that had occurred, appellant would not be guilty . . . because he had not committed the offense at all. . . ." *Williams v. United States,* D.C. App., 342 A.2d 367, 369 (1975).

In light of *Williams, supra,* I cannot agree with the position taken by the majority that the question of who makes the first overture is not crucial to the issue of guilt. My feelings on this matter are firm, notwithstanding the absence of an entrapment issue in the instant case. The majority today expressly allows covert police officers to approach unwary suspects and initiate conversation regarding acts of prostitution. Law enforcement officers play a debased role when they become the instigators of the crime, or partners in its commission, or the creative brain behind the illegal scheme. *United States v. Russell,* 411 U.S. 423, 439, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (Douglas, J., dissenting). By condoning such conduct, the majority invites a virtual flood of litigation regarding entrapment.

Accordingly, for the above reasons, I dissent.

GALLAGHER, Associate Judge, with whom KELLY and MACK, Associate Judges, join, dissenting:

It comes as a surprise to me that the law here involved is not primarily a solicitation

---

This new Act (Section 1) broadened the scope of the offense set forth in Sec. 7 of the 1892 Act in several areas: the persons covered shifted from "any prostitute or lewd woman" to "any person"; the offense was extended to cover not only solicitation for the purpose of prostitution, but also "any immoral or lewd purpose"; the maximum penalty was increased; and provisions were added for suspension of sentences and rehabilitation. See D.C.Code 1973, § 22–

2703. Section 1 of the 1935 Act has been amended twice. Act of June 9, 1948, ch. 428, tit. I, Sec. 102, 62 Stat. 346; Act of June 29, 1953, ch. 159, Sec. 202(b), 67 Stat. 93. The changes brought about by these amendments relate primarily to limiting the age (to persons sixteen years of age or over) of solicitation and increasing the maximum penalty for solicitation.

statute, if only out of constitutional necessity. I should imagine it will come as a surprise to the Bar, too, that this statute [1] is not really directed to solicitation for prostitution but, rather, it has some different, esoteric meaning according to the majority opinion. The gist of this offense ordinarily is that a woman solicits a man for prostitution. But unless the prostitute solicits she does not violate the statute.[2]

As I read the majority opinion, it seems to be stating that, to establish a violation of this statute, it need not necessarily be shown that she solicited the police officer but it is enough if she verbally responds to his approach and subsequent initiative. That is straining quite hard for a violation and I doubt that it would pass constitutional muster.[3]

I had always thought that if a prostitute is merely standing on a corner she may not be convicted of this statute simply because she is a prostitute. Only if she solicits for prostitution may a conviction follow. I would have thought a construction of the statute was that simple, but now it seems that it is not.

My principal problem with the majority opinion is the court appears to be writing the fundamental element of solicitation out of the statute. The facts in prosecutions for this offense vary in their nuances in a myriad of ways from case to case just as they do in Fourth Amendment cases involving arrests. I see no purpose in dissecting such terms in the statute as "address" and "entice" in a hypertechnical, nonlegalistic manner, thereby ignoring the due process realities. There is no avoiding that, when all is said and done, it is essentially a solicitation statute, and to skirt around that is to me not defensible legally.

1. D.C.Code 1973, § 22–2701.

2. *E. g., Williams v. United States*, D.C.App., 342 A.2d 367, 369 (1975). *See also Harris v. United States*, D.C.App., 293 A.2d 851, 853 (1972), *rev'd on other grounds*, D.C.App., 315 A.2d 569 (1974) (en banc).

3. I share dissenting Judge Kelly's mystification (note 1 of her dissent) as to why the majority took this court en banc on this sufficiency of

For my part, this rather simple case has become much too complicated and on no reasonable basis that I can discern. I dissent.

the evidence question in a routine misdemeanor case. As a result we now seem to have strayed off into a highly questionable construction of the statute by the court.

This is what can happen when the court makes an en banc case out of one which has nothing resembling an en banc issue.