**Janet E. BLAIR, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 85–1017.

District of Columbia Court of Appeals.

Argued Sept. 16, 1986.
Decided March 26, 1987.

James L. Kaler, Jr., Washington, D.C.,
for appellant.

Robertson T. Park, Asst. U.S. Atty., with
whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton and
Mary Lou Leary, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, BELSON and
TERRY, Associate Judges.

NEBEKER, Associate Judge:

This appeal from a nonjury conviction of
what, for editorial convenience, we call soliciting for prostitution, D.C. Code § 22–2701
(1986 Supp.),[1] raises several constitutional
challenges to the enforcement of the statute, an evidentiary question respecting the
admissibility of expert testimony, and an
issue concerning the sufficiency of the evidence. We decline to treat the constitutional challenges because they were not
properly raised before the trial court, and,
therefore, are of no avail to the appellant.
We also hold that the receipt into evidence

used in the statute).

of expert testimony respecting the method of operation of prostitutes was within the trial court's discretion and thus not error. With respect to the sufficiency of the evidence, we are confronted with a decision of this court in *Ford v. United States*, 498 A.2d 1135 (D.C.1985), which, in the view of the majority of this division, compels a holding that the evidence is sufficient in this case. However, another division of this court in a decision issued October 10, 1986, *Graves v. United States*, 515 A.2d 1136 (D.C.1986), in our view erroneously declined to follow the *Ford* holding. We affirm the judgment of conviction.[2]

As in *Graves*, evidence in this case consisted of nearly an hour of observations by a Metropolitan Police officer of numerous instances in which the appellant waved at or waved down adult male occupants of automobiles passing by. The area was one which prostitutes frequented to try to arrange for sexual acts for a fee. Appellant was seen to swing her hips back and forth in a sexually provocative manner and yell various words to the occupants such as "come here," "hey baby," "hey honey," "don't leave," and "yoo hoo." During this same period, appellant approached five or six groups of male pedestrians and engaged them in conversation. During the period, she twice left the area with male motorists and returned on one occasion in eleven minutes, on the other in four. *Graves* holds roughly equivalent evidence to be insufficient because it lacks testimony that the inferred sexual activity was "in return for a fee." 515 A.2d at 1145–46.

The government also introduced in this case the testimony of a 15–year veteran of the Morals Division who, over objection, was permitted to testify as an expert in prostitution soliciting activity. He explained the significance of the various actions in which appellant had been seen to engage and then opined that one doing such things was soliciting for prostitu-

tion—specifically seeking money for sexual activity.

As to the constitutional challenges raised by appellant, we note that the government correctly observes that they were not properly raised in the trial court. They were raised orally just before trial. *See* Super. Ct.Crim.R. 47. In any event, we note that two of his principal challenges have, without challenge in *Graves*, already been determined by this court to be without merit. *See Wood v. United States*, 498 A.2d 1140 (D.C.1985) (statute did not infringe first amendment rights); *Ford v. United States*, *supra* (statute neither is vague nor punishes status of being a prostitute).

We find appellant's contention that the trial court abused its discretion in admitting and relying upon the expert testimony to be without merit. Despite the fact that a trial judge in a nonjury setting may be knowledgeable as to the significance of the machinations of prostitutes, the test for the admissibility of expert testimony is the same as in a jury trial. This is so because the law indulges the presumption that the trial judge is an unbiased, uninfluenced adjudicator with respect to matters that are beyond the ken of the average layman. *Cf. In re S.P.*, 465 A.2d 823 (D.C.1983) (in nonjury trial, expert testimony respecting use of martial arts weapon admitted and relied upon by court). We hold that the trial court did not abuse its discretion in admitting and considering, as it did, the expert testimony. *See Adams v. United States*, 502 A.2d 1011, 1021 n. 11 (D.C. 1986); *Ibn-Tamas v. United States*, 407 A.2d 626, 632 (D.C.1979); *Dyas v. United States*, 376 A.2d 827, 831–32 (D.C.), *cert. denied*, 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977). Moreover, this testimony was not improper under *Lampkins v. United States*, 401 A.2d 966, 970 (D.C. 1979), which allows testimony on an ultimate issue where the helpfulness of the expert opinion outweighs its potential prej-

---

**2.** Also pending before the court are consolidated appeals in *Ford & Koluder v. United States*, Nos. 83–1105 & 83–1108; Nos. 83–1106 & 83–1109, respectively. Those appeals present the same question respecting evidence sufficiency as we faced in *Graves* and this case. A *sua sponte* en

banc rehearing has been ordered in the *Ford & Koluder* consolidated appeals. A petition for en banc rehearing is pending in *Graves*, but because one judge has recused himself, the full court of nine judges is not available to consider the petition.

udice. Such prejudice is particularly diluted in a nonjury trial. *See In re L.J.W.*, 370 A.2d 1333, 1336–37 (D.C.1977).

In finding guilt, the trial court relied, *inter alia*, on appellant's testimony on direct examination that, other than on this particular occasion, she was a working prostitute and was in the area where other persons were soliciting for prostitution by similar activity.[3] The trial judge also relied on testimony that appellant's conduct was in an area in which there was a high incidence of prostitution. Although appellant's challenge to sufficiency of the evidence is in more general terms, we deem her to raise any ground on which a holding of insufficient evidence could be based. If we do not treat her claim this way, we disadvantage her by an incomplete analysis. *See, e.g., Watson v. United States*, 508 A.2d 75, 88 (D.C.1986) (opinion vacated September 16, 1986; decision on rehearing en banc pending).

We are satisfied that the trial judge was correct in considering the character of the location where the offense took place. Human history, from the beginning, has recorded that the marketplace is the center of sale or barter of goods and services. It only makes sense that those who wish to sell go to where the greatest number of those in demand will be—hence, the bazaars of an earlier day and the shopping centers of today. Indeed, for fourth amendment purposes, the marketplace factor is—though not itself determinative—a significant circumstance to be considered in determining the reasonableness of police intrusion. *See United States v.*

*Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975); *United States v. McCarthy*, 448 A.2d 267, 270 (D.C.1982). The logic of the rule should not be different when the question is one of guilt. In either event, the law recognizes simple rules of marketing. To refuse to permit evidence that one, otherwise behaving as a vendor, is in an area where trade or services are bought and sold blinks reality. To hold that use of such evidence in some way restricts liberty to go into that area, or works an unequal treatment between those in the area and out of it, reduces those constitutional protections to the absurd. Use of such evidence does not remotely equate to barricading the innocent from the area. As this and other such cases reveal, it is conduct over and above mere presence that precipitates arrest and prosecution. If police harassment of the innocent is to be feared, refusal by the courts to hear nature-of-the-area testimony is not the solution. It is the trial and the reasonable doubt standard that determines ultimate credibility. Likewise, to hold that police may not concentrate their enforcement activities in the place of most frequent violations is unthinkable.

We said in *Ford*, and innumerable other cases,[4] that the surrounding circumstances must be taken into account. Otherwise, the law would become the handmaiden of the unknowing. We hold that the evidence of appellant's presence in the "marketplace" is a fact logically and lawfully to be viewed as a circumstance permissibly, but not presumptively, pointing to guilt.

---

**3.** We note that this "prior acts" testimony was broached by appellant on her direct testimony. Nonetheless, it was not error to consider this testimony regardless of who adduced it. In another part of the *Graves* opinion, the court was required to treat the question of error in the use of "prior convictions for sexual solicitation." 515 A.2d at 1138–44. Proof of prior conviction does not prove the precise method employed to commit the criminal offense. Thus, the holding in *Graves* that it is error to admit prior convictions in the government's initial case does not likewise establish that it is error to prove the nature of the prior act without mention of the fact of previous conviction. The use of "prior acts" phrasing later on in the

*Graves* decision goes beyond the single issue raised and decided.

**4.** *Ford, supra*, 498 A.2d at 1138; *see, e.g., Noaks v. United States*, 486 A.2d 1177, 1178–79 (D.C. 1985) (sufficient evidence to sustain conviction of robbery by stealth of decoy victim in high crime area); *Johnson v. United States*, 386 A.2d 710, 713 (D.C.1978) (evidence that incident occurred in high crime area may have been relevant on issue of assault on a police officer); *see also Commonwealth v. Wymes*, 260 Pa.Super. 566, 568, 394 A.2d 1291, 1292 (1978) (sufficient evidence to sustain conviction of possession of prohibited weapon where, *inter alia*, incident occurred in high crime area).

Appellant's contention that the evidence was insufficient in our view fails, despite the holding in *Graves, supra,* that "in return for a fee" may not be inferred.

The nub of the dissent's (and *Graves'*) disagreement with *Ford* is revealed by the dissent itself when it states:

> But it is not a crime, even for a prostitute, to wave at cars or talk to passing motorists with such a purpose [to solicit prostitution] in mind; the crime proscribed by section 22–2701 consists of taking the further step of offering to engage in sex for a fee. To prove that, *the government had to present evidence of what she actually said,* not what she probably intended to say....

*Post* at 175 (emphasis added). *Ford,* to the contrary, made it clear that it was not necessary to present evidence of the words actually used in the solicitation of prostitution, 498 A.2d at 1137–38, and that the statutory definition of prostitution includes the concept of agreeing or offering "to engage in sexual acts ... *for a fee." Id.* at 1137 n. 1 (emphasis supplied).

Both the dissent and the division in *Graves* have taken a curious and selective view of the reach of circumstantial evidence. It seems that such evidence may prove certain elements of the offense but not the essential fee. To them, direct testimony is required for this element. We are not told why, but just that it is so.

As noted in footnote 2, *supra,* a majority has voted to rehear en banc the related cases of *Ford & Koluder v. United States,* Nos. 83–1105 & 83–1108; 83–1106 & 83–1109. The implication is that the issues presented are important enough to warrant en banc decision. Indeed, they are important, not only to law enforcement but to public health. It is hardly unexpected that Acquired Immune Deficiency Syndrome is reported among half of a group of prostitutes studied by Howard University. *See The Washington Post,* March 4, 1987, at p. A–1. We are surely confronting a legal issue with serious and immediate public health consequences.

We hold the *Ford* decision to be controlling, notwithstanding *Graves.* In *Ford,* we emphasized repeatedly that the particular type of solicitation that we held provable by circumstantial evidence was solicitation for prostitution. For example, we stated that "the evidence must have been sufficient to sustain a finding beyond a reasonable doubt that appellant's conduct was for the purpose of prostitution." 498 A.2d at 1138. We also noted that "prostitution" was defined by the Council of the District of Columbia in the statute we were discussing, D.C.Code § 22–2701 (1984 Supp.), as follows:

> (1) "Prostitution" means the engaging, agreeing to engage, or offering to engage in sexual acts or contacts with another person in return for a fee.

*Ford, supra,* 498 A.2d at 1137 n. 1 (quoting D.C.Code § 22–2701.1 (1984 Supp.)).

Thus, it is clear that the holding of *Ford* is that the so-called "beckoning" circumstantial evidence is sufficient to establish guilt of soliciting sexual acts or contacts for a fee. That the parties in *Ford* placed no emphasis on the fee aspect of the transaction is of no moment, because the fee is an integral part of the definition of prostitution. Even though the holding by this division is in conflict with the *Graves* holding, we think it our duty to adhere to the rule announced in *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). In our view, only an en banc decision can resolve this conflict. See note 2, *supra.*

However, for the guidance of the trial court and law enforcement officials, we proceed to consider the additional testimony of the expert witness, something which is not required by the *Ford* decision and not present in *Graves.* Thus, if, *arguendo,* the evidence in this case is deemed insufficient without reference to the expert testimony, as *Graves* would hold, we hold that that testimony, together with other evidence of record, was sufficient to establish guilt beyond a reasonable doubt. The expert testified that appellant's activities were significant, and that they signified she was trying to see if passing men wanted a date, *i.e.,* "sex for money." Thus, even if the *Graves* division were correct in requiring more than circumstantial evi-

dence of a fee, the evidence of record here would satisfy that requirement. Accordingly, the judgment of conviction is

*Affirmed.*

TERRY, Associate Judge, dissenting:

The majority bases its affirmance of appellant's conviction on the premise that our decision in *Graves v. United States,* 515 A.2d 1136 (D.C.1986), improperly ignored controlling precedent in *Ford v. United States,* 498 A.2d 1135 (D.C.1985), so that *Graves* need not and should not be followed. I cannot accept that premise. *Graves* did not ignore, and is not inconsistent with, *Ford,* for the simple reason that the issue presented in *Graves* was not presented in *Ford* (as the *Graves* court made crystal-clear). I would therefore hold that *Graves*—not *Ford*—controls this case, and that appellant's conviction must be reversed because the evidence was insufficient to sustain it. In addition, I believe that the expert testimony was erroneously admitted and that this error is a separate and independent ground for reversal. Accordingly, I dissent.

I

As I read the *Ford* opinion, and as I recall the *Ford* argument from having been a member of the division that heard it, the entire focus of the sufficiency argument was on whether the officer's testimony established a solicitation. There was no challenge whatever to the proof of the purpose of the solicitation, and the division did not raise the issue on its own. Such restraint was, of course, entirely proper.

The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.

*Carducci v. Regan,* 230 U.S.App.D.C. 80, 86, 714 F.2d 171, 177 (1983). Had the court in *Ford* (or any case) reached out and decided an issue that was not raised by the parties, or at least briefed or argued after having been raised by the court *sua*

*sponte,* the losing party would have had a legitimate grievance.

Thus the *Graves* court was absolutely right in concluding that it was not bound by *Ford* because "*Ford* does not even discuss, let alone purport to decide, the fee issue." 515 A.2d at 1147. There is no occasion to invoke the rule of *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971), that one division of the court may not overrule another, for *Graves* did not overrule, ignore, or otherwise refuse to follow *Ford.* The majority's statement here "that the holding of *Ford* is that the so-called 'beckoning' circumstantial evidence is sufficient to establish guilt of soliciting sexual acts or contacts *for a fee,*" *ante* at 173 (emphasis added), puts a greater weight on the *Ford* opinion than it can bear. In this case, like *Graves*—but unlike *Ford*—the fee issue is squarely presented. In both this case and *Graves* there was zero evidence "that appellant solicited 'sexual acts or contacts with another person in return for a fee.'" 515 A.2d at 1148, quoting from the statutory definition of prostitution in D.C.Code § 22–2701.1 (1986 Supp.). We reversed the conviction in *Graves,* quite rightly, because of that lack of evidence; we should reverse the conviction in this case for the same reason.

The court noted in *Graves* that it had "found no case in the District of Columbia, until *Ford,* which has upheld a conviction [of soliciting for prostitution] without some reference to financial consideration." 515 A.2d at 1147 (citations omitted). The only logical explanation for this difference between *Ford* and all the other reported cases, as the *Graves* court inferred (and as the record in *Ford* confirmed), is that the issue of "financial consideration" was not raised in *Ford.* As *Graves* and many other cases make clear, the statute requires in every case that there be proof of a commercial purpose in the transaction between the putative prostitute and her putative customer; without such proof, the statute almost certainly could not withstand constitutional challenge. *See Wood v. United States,* 498 A.2d 1140, 1144 (D.C.1985); *United States v. Moses,* 339 A.2d 46, 51–53 (D.C.1975), *cert. denied,* 426 U.S. 920, 96

S.Ct. 2624, 49 L.Ed.2d 373 (1976). Although it does not matter which party "broaches the commercial nature of the transaction," there must be evidence of "an understanding ... that a commercial venture was contemplated when the sexual availability was made apparent." *Dinkins v. United States*, 374 A.2d 292, 296 (D.C. 1977) (en banc).

The crime of which appellant was convicted has four elements. The government was required to prove that she

(1) invited, enticed, or persuaded (or addressed for the purpose of inviting, enticing, or persuading) (2) a person age 16 or over (3) for the purpose of engaging, agreeing to engage, or offering to engage in sexual acts or contacts with that person (4) in return for a fee.

*Graves, supra*, 515 A.2d at 1145. Because there was no proof of the fourth element in this case, the evidence was insufficient to convict appellant, and her conviction should be reversed.

## II

As part of its case in chief, the government presented the testimony of a police detective, Wally Papaj, whom the court accepted (over defense objection) as an expert "in the area of prostitution and solicitation." After describing his background and experience, Detective Papaj was asked the significance of conduct like that in which appellant had engaged—"standing, waving at cars, and using words like 'hey, babe' and 'hey, honey' as the cars came up...." He replied that such activity "would be prostitution-related."

Q. [by the prosecutor]: And what do you mean by that?

A. That they are trying to get a date, trying to get the guy to pull over so they can have a talk with them and see if they want a date.

Q. And what do you mean by a "date"?

A. Have sex for money.

Significantly, Papaj did not testify—nor could he, because he had not been there—that appellant, on any of the occasions when she waved at cars and talked to the motorists who stopped at her signal, had offered to perform any sexual act in return for a fee.

In my view, Papaj's testimony had no cognizable probative value. At most, it showed that appellant's conduct on the evening of May 29, 1985, was consistent with the general behavior pattern of prostitutes. I am willing to assume for present purposes that it was sufficient to prove that she was in fact a prostitute. But prostitution is not a crime in the District of Columbia. What the law brands as criminal is not the status of being a prostitute, but the act of offering to engage in some sort of sexual conduct with another person in return for a fee. *See, e.g., United States v. Moses, supra*, 339 A.2d at 50–51; *cf. Ricks v. District of Columbia*, 134 U.S. App.D.C. 201, 214, 414 F.2d 1097, 1110 (1968) ("a citizen cannot be punished merely for being 'a suspicious person'" (footnote omitted)). Thus in every case brought under D.C.Code § 22–2701, the government must prove not just the defendant's conduct, even though it may strongly suggest (as it did in this case to Detective Papaj) that she is a prostitute, but the substance of the exchange between the defendant and another person. The exchange need not be verbal (though it almost always is), but there must at least be some evidence of a communication between the defendant and the other person *and some proof that the contents of that communication is within the proscription of the statute. E.g., Dinkins v. United States, supra*, 374 A.2d at 296.

Detective Papaj's testimony proved nothing about what appellant might or might not have said to the motorists who stopped their cars and talked with her. It was apparently offered to show that her purpose in waving at cars and talking to the drivers of those that stopped, all of whom were male, was to engage in sex for money. But it is not a crime, even for a prostitute, to wave at cars or talk to passing motorists with such a purpose in mind; the crime proscribed by section 22–2701 consists of taking the further step of offering to engage in sex for a fee. To prove

that, the government had to present evidence of what she actually said, not what she probably intended to say, which is all that Papaj's testimony showed. Accordingly, I would hold that Detective Papaj's testimony was incompetent to prove any material fact, that it was therefore erroneously admitted, and that in any event it was not sufficient, either alone or in combination with any other evidence, to prove the crime with which appellant was charged.

For these reasons, I respectfully dissent.