John T. **BLYTHER**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 85–434.

District of Columbia Court of Appeals.

Submitted May 15, 1990.
Decided July 16, 1990.

Steve Larson–Jackson with whom John T. Irick, was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., with whom John R. Fisher, Thomas J. Tourish, Jr. and Gilberto De Jesus, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and REILLY, Senior Judge.

ROGERS, Chief Judge:

Appellant John T. Blyther appeals from his conviction of sexual solicitation, D.C. Code § 22–2701 (1989 Repl.), on the principal ground that there was insufficient evidence that his conduct was prohibited by the statute. We hold that section 22–2701 applies to commercial solicitation in a private residence, and affirm.

### I.

Appellant John Blyther was a resident at the Woodner, a private apartment building in the northwest section of the District of Columbia. On December 5, 1984, Robert Austin, a security guard at the Woodner, received an anonymous telephone call.

Based on the telephone call, Austin obtained a copy of the newspaper, the *Washington Blade*, and read the classified section headed "Model/Escort," and in particular the following advertisement: "John, 387–1619, tall, black, handsome and well-endowed." Austin then called the Metropolitan Police Department and Officers Heath and Jones responded.

Officer Heath testified that after reading the advertisement, he telephoned "John" and using the assumed name "George," inquired about the newspaper ad. When "John" asked him what he would like to know, Heath said he would like to discuss the ad in person and arranged to meet "John" in his apartment. Before hanging up, Heath asked "Is there anything I should bring?" and appellant responded "$50 cash."

Around 7:00 P.M., dressed in casual clothes, Heath and four other police officers went to "John's" apartment. Heath knocked on the apartment door while the other officers stood close by. After a brief conversation with appellant at the door, Heath entered the apartment. Heath was nervous, and said he had never done anything like this before. When appellant asked him "What do you like to do?," Heath said he did not know and asked appellant what he liked to do. Appellant responded "I would suck your dick, and fuck with you for fifty dollars." Appellant, commenting on Heath's nervousness, then suggested that they have a drink and watch the news on television. As appellant began making the drink, Heath opened the apartment door, and the other officers entered, and appellant was arrested.

Officer Jones, who was with Heath the night that appellant was arrested, testified that he heard Heath make the telephone call and accompanied Heath to the apartment and waited outside. After appellant was arrested and read his rights, appellant stated that he was an "escort service," and when asked if sex was discussed admitted that it might have been.

Appellant testified that someone came to his apartment door shortly after he had received a telephone call from a person

named George. Recognizing that his friend George was not the person at the door, appellant testified that he thought maybe the person at the door was someone he had met and forgotten. He let the man in and offered him a drink. Appellant claimed that there was virtually no conversation between himself and the man he let into his apartment. He denied mentioning money during the telephone conversation.

The trial judge, sitting without a jury, found appellant guilty as charged and imposed a fine of $200.00 and sentenced appellant to thirty days in jail, suspended the execution of sentence, and placed him on unsupervised probation for six months.

## II.

To convict a defendant of solicitation under D.C.Code § 22–2701,[1] the government must prove that: (1) the defendant invited, enticed or persuaded (2) a person age 16 or over (3) for the purposes of engaging, agreeing to engage, or offering to engage in sexual acts or contacts with that person (4) for a fee. *Ford v. United States*, 533 A.2d 617, 624 (D.C. 1987). The question remains whether section 22–2701 was intended to prohibit private commercial solicitations in a private residence or was limited to solicitations in public places. In *Lutz v. United States*, 434 A.2d 442 (D.C.1981), the court concluded that the statute, on its face, is not limited to public solicitations and, therefore, does not protect sexual solicitations in private places. *Id.* at 444. In that case, two police officers checked into adjoining rooms in a hotel for the purpose of investigating complaints about "outcall massage services" operating in hotels. One police officer placed a telephone call to an outcall massage service, and after Lutz appeared in response, initiated a discussion about the prices of various sexual services; Lutz was arrested and her conviction affirmed on appeal. The court in *Lutz* explicitly held that the statute, by its own terms, is not limited to public solicitations. *Id.* at 443–44. Accordingly, the statute provides no bar to its application to conduct that occurs in a private residence. Any bar will exist, therefore, only if there is a constitutional right to privacy against government intrusion which protects such conduct.

The court declined in Lutz to find a "fundamental right to privacy for commercial sexual solicitation." *Id.* at 445. Acknowledging the Supreme Court's recognition of a person's right under the First Amendment to possess—without commercial intent—obscene material in his or her home, *see Stanley v. Georgia*, 394 U.S. 557, 559, 89 S.Ct. 1243, 1244, 22 L.Ed.2d 542 (1969), the *Lutz* court focused on the distinction between this non-commercial right and that of an entrepreneur to engage in "commercialized obscenity," which was denied constitutional protection in *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 67, 93 S.Ct. 2628, 2640, 37 L.Ed.2d 446 (1973). *Lutz, supra,* 434 A.2d at 445. Similarly, the court concluded in *Lutz* that although the constitutional right to privacy protects certain intimate conduct in a hotel as well as in a private home, "this right does not extend to protection for commercial sexual solicitation." *Id.*

Unlike *Lutz*, appellant was charged with solicitation in his residence, not a hotel room. A concurring opinion noted that Lutz had no reasonable expectation of privacy in the officer's hotel room. *Id.* at 446. (Newman, J., concurring). Accordingly, the issue is whether appellant had such a reasonable expectation of privacy in his apartment that he could use it for commercial sexual solicitation and if so, whether he can nonetheless be subject to criminal prosecution under D.C.Code § 22–2701.

1. D.C.Code § 22–2701 (1989 Repl.) provides in relevant part:

 (a) It shall not be lawful for any person to invite, entice, persuade, or address for the purpose of inviting, enticing, or persuading any person or persons in the District of Columbia for the purpose of prostitution or any other immoral or lewd purpose. * * * *

 (b) Inviting, enticing, persuading, or addressing for the purposes of inviting, enticing, or persuading, for the purpose of prostitution includes, but is not limited to, remaining or wandering about a public place and * * *.

In *Stanley v. Georgia, supra*, the Supreme Court held as to possession of obscene material that the Constitution protects conduct occurring inside a private home that would not have been protected outside the home. 394 U.S. at 559, 89 S.Ct. at 1244. However, in *Bowers v. Hardwick*, 478 U.S. 186, 195, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1985), the Court made clear that the protection afforded by taking otherwise criminal conduct into a private home is limited. *Bowers* involved a constitutional challenge to a law criminalizing homosexual sodomy which applied to conduct occurring within the privacy of the home. Upholding the Georgia statute, the *Bowers* Court noted that, "plainly enough, otherwise illegal conduct is not always immunized whenever it occurs in the home." *Id.* at 195, 106 S.Ct. at 2846. Indeed, "*Stanley* itself recognized that its holding offered no protection for the possession in the home of drugs, firearms, or stolen goods," *id. (citing Stanley v. Georgia, supra*, 394 U.S. at 568 n. 11, 89 S.Ct. at 1249 n. 11), and warned that limiting constitutional protection to voluntary sexual conduct between consenting adults "would be difficult, except by fiat," since, the Court presumed, such a rule would protect only certain conduct while leaving exposed to prosecution other sexual crimes, such as adultery and incest, even though they are committed in the home. *Id.* 478 U.S. at 195–96, 106 S.Ct. at 2846. Most recently, the Supreme Court again emphasized the limits of *Stanley*, upholding an Ohio child pornography statute against a First Amendment challenge where the possession and viewing of pornographic photographs of a nude male adolescent occurred in a private home. *Osborne v. Ohio,* — U.S. —, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990).

The highest court in one state has definitively rejected the notion that the act of engaging in sex for hire is a fundamental right in our scheme of ordered liberty. In *State v. Mueller*, 66 Haw. 616, 671 P.2d 1351 (1983), the Supreme Court of Hawaii declined to hold that voluntary sexual activity between consenting adults in a private setting without public soliciation fell within the right to privacy under the federal or the state constitutions. 671 P.2d at 1356. Noting at the time the absence of clear guidance in defining the scope of the right to privacy from the United States Supreme Court, *id.,*[2] the court conceded that "there is room for argument that the right [to privacy] encompassed any decision to engage in sex at home with another willing adult," but found no evidence that a decision to engage in prostitution has been recognized as a fundamental right, contrasting it to personal decisions such as those relating to marriage, procreation, contraception, family relationships, child rearing and education, which have received constitutional protection. *Id.* at 1358 (citations omitted). From reading Supreme Court decisions, the court "perceive[d] no inclination on the part of the [United States Supreme] Court to exalt sexual freedom per se or to promote an anomic society," and upheld the conviction on the basis of the "social interest in order and morality that enables a state legislature to act in this area." *Id.* (citations omitted). The defendant had received a telephone call from an undercover police officer and agreed to have sex with him for a fee of $100. *See also Blake v. State*, 344 A.2d 260 (Del.1975) (statute prohibiting prostitution does not violate equal protection).

Accordingly, the protection afforded to sexual conduct performed inside the home that would otherwise be criminal is not unlimited. Appellant has not demonstrated that his actions involve fundamental rights heretofore constitutionally recognized as falling within the right of privacy, and we

---

**2.** The court cited *Doe v. Commonwealth's Attorney*, 403 F.Supp. 1199 (E.D.Va.1975), a sodomy conviction involving consenting adults in private, which was affirmed without opinion. *Doe v. Commonwealth's Attorney*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976). 671 P.2d at 1356. The court also referred to the Supreme Court's observation in *Carey v. Population Ser-* *vices International*, 431 U.S. 678, 694 n. 17, 97 S.Ct. 2010, 2021 n. 17, 52 L.Ed.2d 675 (1977) that it "has not definitively answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating ... [private consensual sexual] behavior among adults." 671 P.2d at 1356 n. 5.

are unpersuaded that the constitutional right to privacy protecting certain intimate conduct extends to advertised commercial sexual solicitation performed inside a private residence. To hold otherwise would provide an easy route for bypassing the criminal statute to anyone who wished to solicit for prostitution, merely by conducting business inside a private residence. Under the circumstances, this court could not hold that the legislature's decision to make such conduct criminal is without a rational basis. *Cf. State v. Mueller, supra,* 671 P.2d at 1360 ("large segment of society undoubtedly regards prostitution as immoral and degrading, and the self-destructive or debilitating nature of the practice, at least for the prostitute, is often given as a reason for outlawing it") (*citing Paris Adult Theatre I v. Slaton, supra,* 413 U.S. at 63, 93 S.Ct. at 2638 ("The sum of past experience affords ample basis for legislatures to conclude that a sensitive, key relationship of human existence ... can be debased and distorted by crass commercial exploitation of sex.")). Rather, we extend the conclusion reached in *Lutz,* that "commercial sex does not concern an intimate relationship of the sort heretofore deemed worthy of constitutional protection," to such sexual conduct occurring within a private residence.

Accordingly, the judgment is affirmed.[3]

---

**3.** Appellant's other contentions are meritless. The evidence was clearly sufficient to sustain the conviction. *See United States v. Covington,* 459 A.2d 1067, 1070–71 (D.C.1983) (view evidence in light most favorable to government); *Dinkins v. United States,* 374 A.2d 292, 296 (D.C. 1977). The advertisement, which appellant does not dispute that he placed in the paper, in conjunction with the conversations between Heath and appellant on the telephone and in the apartment, provide sufficient evidence from which the judge could reasonably infer that appellant's purpose was to invite or persuade someone to exchange money for sexual acts or contacts. The absence of a discussion of sexual acts during the telephone call did not defeat the govern-

ment's case in light of Heath's testimony about what appellant said when Heath was in his apartment.

Finally, the trial judge did not err in rejecting appellant's defense of entrapment. There was no showing that the government instilled a criminal notion in an otherwise innocent individual. *See United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Williams v. United States,* 342 A.2d 367, 369 (D.C.1975). *See also German v. United States,* 525 A.2d 596, 612–13 (D.C.1987). To the contrary, appellant placed the advertisement, suggested the officer bring money, and described the acts that he would perform in exchange for a fee.